## W. I. Moody v. Chicago Title and Trust Company, Trustee, et al.

### Gen. No. 12,282.

1. President—*charged with knowledge of financial stress of company.* The president of a corporation is charged with knowledge of its straightened financial condition.

2. Preference—*when corporation may, when may not, make.* In this State an insolvent corporation can prefer its creditors the same as an individual, but such a corporation cannot prefer a creditor who at the same time is a director therein.

3. Preference—*when in violation of Bankruptcy Act.* Where an officer of a corporation furnishes money to a corporation with which to pay its obligations upon which he is a guarantor at a time when it is insolvent and receives in return a transfer of its assets, he thereby receives a preference in violation of section 60-B of the Bankruptcy Act.

Bill of interpleader. Appeal from the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding. Heard in the Branch

Moody v. Chicago Title & Trust Co.

Appellate Court at the March term, 1905.  Affirmed.  Opinion filed April 10, 1906.

Statement by the Court.  On January 12, 1903, Walter I. Moody was the owner of one-half of the capital stock of the Moody–King Company, a corporation doing business in Chicago as commission merchants.  W. W. King was the vice-president of the company and the owner of nearly all the balance of the stock and was the general manager of the company in active charge of its business. Mr. Moody at no time during the life of the corporation was in active charge of the business, nor did he at any time pay special attention to its affairs, except in receiving reports rendered to him from time to time by Mr. King. On the date above mentioned Mr. Moody and Mr. King met at the office of the attorney for Mr. Moody, and the parties made the following verbal agreement, which was afterwards to be reduced to writing and signed by them, to wit:  That in consideration of the payment by Mr. Moody of the principal bank indebtedness of the corporation to the American Trust & Savings Bank, amounting to $13,000 (the note of the corporation securing the indebtedness, given in May or June of 1902, having been guaranteed by Mr. Moody individually), and in further consideration of the transfer of Mr. Moody's stock in·the corporation to Mr. King, the corporation was to transfer to Mr. Moody assets and securities of equal value to.the note and stock, and was to pay the interest due to the bank on the note.

In pursuance of the verbal agreement so made and before its provisions were carried out by either Moody or King, Moody delivered to Mr. King his stock in the corporation, assigned in blank, and his resignation as president and director of the corporation.  Directly thereafter and in pursuance of the provisions of the agreement Moody paid the principal of the bank indebtedness, and King delivered to Moody the notes of the Moody–King Company for $4,-300, which notes were endorsed by King personally; also a $5,000 certificate of stock in the corporation of James Rowland & Co.; also one note signed by George B. Ross for

$1,500, and a certain bond issued by the American Credit Indemnity Company of New York, Number 19,467, previously issued to Moody, King & Cook, predecessors of the Moody–King Company.

It appears from the record that the purpose of the meeting at the office of the attorney was to have the attorney draft a memorandum of the agreement already entered into, and the attorney took memoranda of the points of the agreement and proceeded to prepare a draft of the agreement for the signature of the parties, and did do so; and it seems to be admitted that the draft as prepared was in all respects in accordance with the verbal understanding of the parties.

After stating to Mr. Moody's attorney the points of the agreement Mr. King took advice of his own attorney in regard to the agreement which he was about to enter into, and was advised that to enter into such an agreement would be illegal, and would be creating a preference among the creditors of the Moody-King Company in favor of Mr. Moody, and having received this advice Mr. King declined to sign and carry out the agreement.

At the time of the conversation in the attorney's office and the making by him of the brief notations of the proposed agreement King did not have the credit indemnity policy with him, and on the request of the attorney, together with a statement that he " wished to read over its clauses," the credit indemnity policy was sent to the attorney.

Shortly thereafter a petition in bankruptcy was filed against the Moody-King Company in the United States District Court, and on March 16, 1903, it was adjudged a bankrupt, and later the Chicago Title and Trust Company was elected trustee in the bankruptcy proceedings.

On March 14, 1903, Mr. Moody filed his bill in the Circuit Court of Cook County against the American Credit Indemnity Company, asking that the proceeds of the said policy be paid to him under his agreement with Mr. King by the insurer under the policy, the sum due under this policy

having been ascertained to be $600. Later the American Credit Indemnity Company of New York filed its bill of interpleader in the Circuit Court, averring that Moody and the Chicago Title and Trust Company, trustee in bankruptcy of the Moody-King Company, claimed the fund. To this bill the Chicago Title and Trust Company, trustee, filed its answer, denying the assignment of the bond to Moody and asserting that any assignment that he had was in violation of the bankruptcy law, in that it had been obtained within four months of the filing of the petition in bankruptcy, and when Moody had reasonable cause to believe it was intended thereby to prefer him, and alleging that the Chicago Title and Trust Company, trustee, was entitled to the amount due under the bond.

Mr. Moody filed his answer, setting up the agreement of January 12, 1903, and that the assignment of the bond was in part consideration of the agreement, and that he was entitled to the proceeds of the bond and all benefits accruing thereunder or to accrue to its beneficiary, and that he had fully performed his part of the agreement, and had received from the corporation, through King, all the consideration agreed upon on January 12th to be given to him, including the bond in question, and all interest of the corporation therein, and claiming that he, Moody, was the only one entitled to the funds due under said bond.

By an amendment to its answer, filed later, the Chicago Title and Trust Company set up that when Moody obtained the assignment of the policy he was president of the Moody-King Company, which was then insolvent, and that he received the bond in fraud of the rights of other creditors, who were not officials of the company.

After a hearing on the merits a decree was entered in the Circuit Court, finding the allegations of the bill of interpleader to be true, and that the allegations of Moody's answer were untrue, and that the answer having been ordered to stand as a cross-bill it should, as a cross-bill, be dismissed, and that the Moody-King Company was insolvent an January 12, 1903, and unable to continue its business,

and that Moody had reasonable cause to believe that the transaction was intended to give him a preference, in violation of the Bankruptcy Act, and that the effect of the transfer of the indemnity bond would enable Moody to obtain a greater percentage of his debt, then held by him against the corporation, than any of the other creditors of the same class could obtain; that during the transaction Moody was president and director of the corporation, and that the corporation then owed, excluding said bank indebtedness, fully $10,000 to other creditors, which had not been paid, and that to allow Moody to recover the $600 due under the indemnity bond would be inequitable and a fraudulent preference to him over the other creditors of the Moody-King Company, and directed the clerk to pay to the Chicago Title and Trust Company, trustee, the money which had been deposited by the complainant in satisfaction of the bond, and ordered Moody to deliver the bond to the complainant within ten days from date, and barred Moody, his agents and attorneys and all persons claiming through or by him, from asserting any demand against the complainant under or upon said bond.

CHARLES A. BUTLER, for appellant.

ROSENTHAL, KURZ & HIRSCHL, for appellees; EDWARD MENKIN, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The sole matter of controversy in this case is the right to the proceeds of the credit indemnity bond. From the evidence in the record it may well be doubted whether the indemnity bond in question was ever transferred to the appellant. We are inclined to the opinion that the delivery of the bond to the attorney for appellant Moody, under the circumstances, was not intended to be the formal transfer of the bond to him under the agreement. The bond was sent or delivered to the attorney for the purpose of enabling him to read its provisions and to describe it more

correctly and particularly in the draft of the agreement which he was engaged in preparing. It was not assigned to Moody by the company either formally or informally, and the circumstances shown in the record would seem to indicate that it was the intention of the parties to transfer the bond when the memorandum of agreement was formally signed.

If, however, it can be considered under the evidence that the bond was delivered to appellant Moody in pursuance of the verbal agreement which had been entered into, but which had not as yet been reduced to writing and signed, it was, at most, a partial execution of an incomplete agreement, and its validity, under the facts, is questioned by appellee upon the ground that it was fraudulent and void as to the creditors of the Moody–King Company, and upon the further ground that the transaction was in violation of the bankruptcy law.

Upon the first contention the court found that the Moody–King Company at the date of the pretended transfer was insolvent. The subsequent bankruptcy proceedings would seem to be conclusive evidence upon that question.

The testimony of the expert who had made an examination of the books of the Moody–King Company leaves little room for doubt that the company was in a failing condition. Moody evidently knew that the company was in bad financial condition. His principal excuse for entering into the agreement and obtaining a transfer of the bond was that his banks were finding fault with King's management of the company; that the company had borrowed $20,000 from the National Bank of North America, and that his credit with his own bankers was impaired by his connection with the company and his endorsement of its paper. He testified that he could not afford to be connected with the corporation any longer, because his bankers were finding fault with King and his manner of doing business, and that the credit of the company and his own credit was being injured in Chicago; that he was engaged in much larger enterprises, and that he could not longer

afford to be associated with a concern that was carried on and managed as King managed the Moody–King Company.

We think the evidence fairly tends to support the findings of the decree that the company was insolvent, and that appellant Moody knew that it was insolvent; but whether he knew of the actual condition of the company is legally unimportant, for he was bound to know its condition, and occupying the position that he did he must be presumed to know its actual condition.

The question then is, could Moody, the president and a director of the corporation, advance the money to the company to pay its indebtedness to the bank according to the contemplated agreement and take over the assets of the corporation while it was insolvent and hold them as against the existing creditors of the company or the trustee in bankruptcy?

It is claimed on behalf of appellant Moody that on January 12, 1903, at the time the bond was delivered to him, Moody was not a creditor of the corporation, and that, therefore, the taking over of this bond as a part of the assets of the company was not a fraudulent preference of Moody over any other creditor of the company. We think, however, this contention cannot be sustained. According to the terms of the agreement, Moody was to advance this money as a part of the consideration for the assignment of the indemnity bond and other assets of the company. The advancement of the money constituted Moody a creditor, for by that act he took up the indebtedness of the company to the bank, and stood with reference to that indebtedness and the corporation in the relation of the bank to the corporation. He was a guarantor of the debt prior to the making of the agreement, and the agreement did not change his relations in that respect. While he claims to have resigned the offices of president and director, the record does not show that the resignations had been accepted and that he had ceased to occupy those official positions.

It is undoubtedly the law in this State that in the absence of statutory prohibition an insolvent corporation can pre-

fer its creditors the same as an individual; but it is also the law that an insolvent corporation cannot prefer a creditor who at the same time is a director therein. Beach v. Miller, 130 Ill. 162; Rockford Grocery Company v. Grocery Company, 175 Ill. 89. The directors and officers of an insolvent corporation are trustees of its funds and property for the creditors and they cannot give them away or use them to exonerate themselves to the injury of other creditors. Beach v. Miller, *supra.*

We entertain no doubt that the object and purpose of appellant in entering into the transaction in question was to secure an advantage to himself over the existing creditors of the corporation, and that this was the real purpose and object of the verbal agreement which was entered into between appellant Moody and King so far as Moody was concerned, and when Moody obtained possession of the bond in question he took it charged with the trust in favor of the other creditors, and that trust may be enforced in equity.

In Estate of Smythe et al. v. Evans, 209 Ill. 376, it is said, quoting from Aberdeen Railway Company v. Blaikie, 1 MacQueen (H. L.) 461: " A corporate body can only act by agents, and it is, of course, the duty of those agents so to act as best to promote the interests of those corporations whose affairs they are conducting. Such agents have duties to discharge of a fiduciary nature towards their principal, and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has or can have a personal interest conflicting, or which position may conflict with the interests of those whom he is bound to protect."

In our opinion the transfer of the indemnity bond in question, assuming that it was a substantial transfer, was in violation of section 60 B of the Bankrupt Law, where it is provided that a creditor receiving a preference, having reasonable cause to believe that a preference was intended, must return the same.

We think the decree is correct and it is accordingly affirmed.

*Affirmed.*