## John Pelkey *vs.* Fannie A. Hodgdon.

Androscoggin.    Opinion February 22, 1907.

*Collateral Evidence.    Same open to explanation, when.    Implied Admissions of*
*Liability.    Intention.*

In an action brought by the plaintiff to recover for services alleged to have been rendered on the defendant's farm at her request and for her benefit, the defendant admitted on cross examination that after the plaintiff's claim had been made known to her, she mortgaged the farm for $900 for the purpose of taking up a mortgage given by her husband on property belonging to him, but on re-direct examination, the inquiry whether in giving this mortgage she had any purpose to defeat the collection of the plaintiff's claim, was excluded by the court.

*Held :* (1) That if the testimony be called purely collateral, it was not for the plaintiff to call out collateral facts which might prejudice and then object to an explanation of them.

(2) That the testimony that the defendant had given the mortgage under such circumstances might operate as an implied admission of liability on her part and was therefore material and not purely collateral evidence.

(3) That it was the legal right of the defendant to state distinctly on re-direct examination that in giving the mortgage she had no motive or design to hinder the collection of any claim which the plaintiff might have against her, and that she was not precluded from testifying in regard to her own intention by the fact that she was a party to the suit or otherwise, and that the exclusion of the testimony offered was therefore erroneous.

On exceptions by defendant.    Sustained.

Assumpsit brought by the plaintiff against the defendant who is his daughter, to recover the sum of $2932 for the services of himself and his team alleged to have been rendered to the defendant at her request and for her benefit on a certain farm in Poland of which she had a bond for a deed.    Plea, the general issue with a brief statement interposing the statute of limitations as a special matter of defense.

Tried at the September term, 1906, of the Supreme Judicial Court, Androscoggin County.    Verdict for plaintiff for $406.

The defendant took exceptions to certain rulings made by the presiding Justice during the trial, and the case was sent to the Law Court on these exceptions.

The case sufficiently appears in the opinion.

*Jesse M. Libby,* for plaintiff.

*Oakes, Pulsifer & Ludden and W. H. Judkins,* for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

WHITEHOUSE, J. This is an action of assumpsit brought by the plaintiff to recover compensation for services alleged to have been rendered at the request of the defendant and for her benefit, on a farm of which she had a bond for a deed in the town of Poland. It was not in controversy that the plaintiff lived on the premises with his wife and son and carried on the farm, from the spring of 1899 until June, 1905, but the relation of father and daughter existed between the parties, and the defendant says that solely for the purpose of providing a more comfortable home for her parents, she invited them to leave their lonely cabin in New Brunswick and come to her farm in Poland, Maine, and that the plaintiff's labor was accordingly performed chiefly for his own benefit, without any intention on his part of claiming payment therefor other than the produce from the farm which he received from year to year, and without any expectation on her part of making any further payments. The verdict was for the plaintiff for $406, and the case comes to this court on exceptions.

According to the facts recited in the bill of exceptions, there was evidence at the trial tending to show that the purchase price of the farm was $1400 and that at the time the plaintiff entered into possession of it, the defendant had paid only $200 of this amount, but had received a bond for a deed upon the payment of the remaining $1200; that she paid all the taxes assessed on the place, but by arrangement with her father, she received the apples raised on the premises each year; that out of her earnings in the Bates Street Laundry in Lewiston, and the proceeds of the apple crop, she paid the original indebtedness of $1200, and together with the

stumpage of $250 for lumber standing on the place, extinguished a subsequent mortgage of $800 placed on the property for the purpose of raising money to repair the buildings; "that afterwards she put another mortgage of $900 on the farm, and used the money to affect through a trustee, the purchase of a certain other mortgage of $800 given by her husband upon a certain legacy, not then available, owned by her husband on his mother's estate of the value of between two and three thousand dollars, in order to stop large interest accruing upon the mortgage and to save the legacy from being lost by the mortgage."

Concerning this last named mortgage for $900, the bill of exceptions contains the following statements:

"The defendant, Fannie Hodgdon, was inquired of, on re-direct, touching the nine hundred dollar mortgage, the last one put on the farm by her. Counsel for plaintiff claimed by insinuation during the trial and by argument to the jury, that this mortgage and the manner in which she effected the purchase of her husband's mortgage on his legacy, showed a purpose on her part to do something to hinder and delay the collection of her father's claim in suit."

Touching this point, the defendant was asked the following question:

"Whether or not at the time when you put that mortgage, the last mortgage, on your farm, you had any purpose of mind whatever in putting on the mortgage on the farm to defeat the collection of any claim your father might have against you in this court."

This was objected to and excluded and an exception allowed to the defendant.

It is not expressly stated in the exceptions, but it may fairly be inferred from the recitals above quoted that this mortgage was given after the plaintiff's claim for compensation had been asserted and made known to the defendant, and that the facts in regard to it were specifically drawn out on cross examination; for it appears that the " plaintiff claimed by insinuation during the trial," that the mortgage was given to hinder the collection of the plaintiff's claim, and that the defendant's inquiry under consideration was made on "re-direct examination." As observed by this court in *Williams* v.

*Gilman,* 71 Maine, 21, " If the testimony be called purely collateral, it was not for the plaintiff to call out collateral facts, which might prejudice, and then object to an explanation of them. The rule that testimony collateral to the issue, cannot be contradicted, does not apply to testimony introduced by the opposite party, but is confined to testimony introduced by cross examination of an opponent's witness, or otherwise, by the party which proposes to contradict it."

But such a piece of testimony cannot be treated as purely collateral. The fact that the defendant had given a mortgage on the property for such a large amount, for no purpose of her own, if not satisfactorily explained, might indicate a consciousness on her part that she could not successfully resist the plaintiff's claim, and thus operate as an implied admission on her part that there was an existing indebtedness from her to her father. With reference to " conduct as evidence of consciousness of a weak cause" Mr. Wigmore says : "The conveyance of property during litigation or just prior to it, may be evidence of the transferor's consciousness that he ought to lose." Wigmore on Ev. Vol. 1, sect. 282. In the Encyc. of Evidence, Vol. 1, p. 366, under the caption of "Admissions by Conduct" is cited *Heneky* v. *Smith,* 10 Or. 349. This was an action to recover damages for maliciously shooting the plaintiff. At the trial the court admitted in evidence a deed of 400 acres of land executed by the defendant fourteen days after the shooting, for the expressed consideration of $1200. On appeal it was held that the deed was properly admitted. In the opinion the court say :" "The jury might reasonably infer from this act of the appellant, in view of all its surroundings, that it was prompted by a consciousness on his part, that the shooting of the respondent was unjustifiable and that he was legally liable for the damages occasioned by it. In this view, it would operate like an admission of liability, and be equally competent. Admissions may be by acts, as well as by words."

It is true that the defendant appears to have testified affirmatively that this mortgage was given to stop the large interest accruing on the husband's mortgage, and to prevent the sacrifice of the legacy under that mortgage. But upon this state of the evidence the jury might not have been satisfied that these were the sole considerations

that induced her to give this mortgage. They might still have inferred that another and perhaps the principal purpose was to defeat the collection of the claim set up against her by the plaintiff. It was the legal right of the defendant to state distinctly on re-direct examination that she had no such motive or design in giving this mortgage. It was a material fact and not a matter resting wholly in the discretion of the presiding Judge. And it is well settled that the defendant was not precluded from testifying in regard to her own intention by the fact that she was a party to the suit or otherwise. *Edwards* v. *Currier*, 43 Maine, 474. See also Wigmore on Evidence, Vol. 1, section 581, where the objections to the rule are thus answered by the author : " The argument is (so far as any has been vouchsafed) that such testimony may be falsified without the possibility of detection, and that therefore it is dangerous to permit an interested person to allege, in effect, whatever he pleases as to his own state of mind. The answers to this argument are various and sufficient. In the first place, there is no precedent for it in the inherited common law ; it is an attempt to create a rule without an analogy in the accepted doctrines of the judicial rulings. In the next place, it assumes that there is no counter-evidence available, and yet asks that the only evidence which it assumes to be available shall be excluded,— in other words, asks that a concededly proper issue be submitted to the jury with no evidence at all. In the third place, its assumption is incorrect in fact, namely, that there is no other available and sufficient evidence of intent or motive by which the person's own testimony can be tested and checked ; for the evidence from conduct and circumstances and from others' testimony is not only a permissible but a potent source of belief and is amply sufficient to guard against falsification."

It is accordingly the opinion of the court that the evidence offered should have been admitted. This conclusion renders it unnecessary to consider the other exceptions presented.

*Exceptions sustained.*