248

Adolph Goelitz, Sr., Appellee, v. Benjamin L. Lathrop et al.   Appeal of Benjamin L. Lathrop, Appellant.

Gen. No. 38,089.

 Opinion filed July 3, 1936.

SLOTTOW & LEVITON and RALPH C. McCOY, all of Chicago, for appellant; CHARLES LEVITON and HAROLD P. SHANE, of Chicago, of counsel.

LLOYD C. WHITMAN, of Chicago, for appellee.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This appeal seeks to reverse a final decree of the circuit court entered December 19, 1934, making permanent a temporary injunction theretofore ordered April 11, 1933, enjoining Benjamin L. Lathrop (hereinafter referred to as defendant) from enforcing or attempting to enforce against plaintiff, Adolph Goelitz, Sr., a judgment for $9,450 and costs rendered in the circuit court February 15, 1933, in cause No. B-230276, in favor of Lathrop and against said Goelitz and one Adolph A. Henkel.

April 7, 1933, Goelitz filed his bill in the circuit court, the essential allegations of which are that October 19, 1931, Benjamin L. Lathrop brought an action at law in the circuit court of Cook county against Henkel Edge-Lite Corporation (hereinafter referred to as the corporation), Adolph A. Henkel, George J. Kirkgasser, Harry A. Best and Adolph Goelitz, Sr., who were all served with process and appeared; that

Lathrop filed his declaration and issue was joined by the filing of pleas of the general issue and several special pleas by all the defendants; that February 15, 1933, upon trial by the court without a jury, judgment was entered in favor of Lathrop and against Goelitz and Henkel for $9,450, which included attorneys' fees of $1,200; and that the cause was dismissed on the trial as to the defendants Kirkgasser and Best, having been previously dismissed as to the corporation.

The bill also alleged that the cause was tried February 14 and 15, 1933; that Goelitz was not present during the trial nor represented by an attorney, and had no knowledge that the trial was to take place or had taken place until after the expiration of the January term, three days before the end of which the judgment was entered; that Lathrop, Kirkgasser and Best were present at the trial and represented by counsel, and Henkel was neither present in person nor by counsel; that Goelitz is informed and believes, and is advised by counsel, that the proofs upon said trial did not tend to support any cause of action against him and were insufficient in law to support the judgment; that the judgment was contrary to the law and the evidence and would be reversed and a new trial granted in the event of review of the same provided a bill of exceptions was available, which said bill of exceptions cannot, except with the aid of the court, be made to appear of record in this case.

The bill further alleged that Lathrop's attorney stated on the trial that the cause of action arose out of a violation of the Illinois Securities law; that Lathrop purchased 75 shares of preferred and 150 shares of common stock of the corporation, and that the individual defendants were sued as officers or directors; that plaintiff's theory was that the corporation had no authority to sell the stock and was insolvent at the time same was sold to Lathrop; that Lathrop tendered

defendants the stock certificates; and that the only evidence produced at the trial was offered by Lathrop, plaintiff in that action.

The bill also averred that Lathrop testified that in January, 1931, Henkel suggested that Lathrop put some money into the corporation; that in February, 1931, Henkel said that $8,250 would be the price of 75 shares of preferred and 150 shares of common stock, and that if Lathrop put that amount in Henkel would give him a 90-day note signed by the corporation and indorsed by Henkel and some of the officers; that if he wanted his money at the end of 90 days he could have it; that Lathrop told Henkel he would put in $8,250; that February 13, 1931, Lathrop paid $2,500 to Henkel, who gave him a 90-day note for that amount signed by the corporation and indorsed by Henkel and Kirkgasser; that February 27, 1931, Lathrop paid $5,750 to Henkel and received a note for that amount, executed by the corporation and the stock certificates in question executed by Henkel, as president, and George J. Kirkgasser, as secretary; that April 9, 1931, Lathrop attended a stockholders' meeting of the corporation, at which meeting Goelitz was elected a director of the corporation; that Goelitz was a stockholder and director of the corporation; that May 25, 1931, Lathrop told Henkel he desired to return his stock and demanded that the money he had paid for same be refunded; that he repeated his demand several times subsequently and that finally on October 8, 1931, accompanied by his attorney, he renewed the demand, which Henkel refused to comply with; and that Henkel was president and manager of the corporation.

The bill further charged that the only evidence offered on the trial of the lawsuit concerning Goelitz was the testimony of Lathrop that April 9, 1931, Goelitz attended a meeting of the stockholders of the corporation and at that meeting was elected a director of

the corporation, and that he was a stockholder and director of the corporation; and that there was no evidence on the trial to connect Goelitz with the sale of the stock to Lathrop.

The bill further alleged that Goelitz always had a meritorious defense to Lathrop's claim and is not now and never was legally liable to him; that Goelitz never sold nor offered to sell any shares of stock of the corporation, never knowingly performed any act nor in any way furthered the sale of any stock or securities of the corporation to Lathrop and never aided or assisted in the sale of the stock to him; and that he never knew nor heard of any offer of sale or sale of stock to Lathrop until 30 days after the common law action was commenced in the circuit court, never knew prior to November, 1931, that the corporation was insolvent, and never made any sale of any securities of the corporation to anyone.

The bill further asserts that "Goelitz was sorely afflicted physically and mentally for a period of three years, including the date of the institution of the lawsuit by Lathrop in the Circuit court, and that he first learned of the suit from Henkel three days after the service of summons on Henkel October 19, 1931''; that on October 22, 1931, Goelitz, partly because of his ill health, partly because he knew nothing of the facts of the case, and partly because the lawsuit was primarily a matter of the business of the corporation, made inquiry of Henkel, president of the corporation, concerning the case; that Henkel advised him that he would engage a lawyer to represent the corporation and that he would arrange to have the same lawyer appear and represent Goelitz without charge or expense to him, in which arrangement Goelitz acquiesced; that December 8, 1931, at Deerfield, Illinois, Henkel advised complainant that he had employed Decker & Golden as attorneys in the case; that Decker & Golden

entered the appearance of Goelitz and their own appearance as attorneys for him December 9, 1931, and on January 8, 1932, filed pleas in his behalf; that December 28, 1932, at Deerfield, Illinois, Henkel advised Goelitz that he was employing Leo G. Hana, an attorney at law of great ability as a trial lawyer, and that Hana would be substituted in the case for Decker & Golden, to which Goelitz agreed; and that Hana entered his appearance for Goelitz and the other defendants on that date.

The bill also averred that January 17, 1933, at Chicago, attorney Hana placed in a United States mail box a sealed envelope addressed to Goelitz at Deerfield, Illinois, bearing an uncanceled United States three cent postage stamp and containing a copy of a notice that Hana would move the court January 19, 1933, for leave to withdraw as attorney for defendants; and that January 19, 1933, pursuant to such notice and by leave of court, Hana, unknown to Goelitz, withdrew as attorney for defendants.

The bill further asserted that neither the envelope mailed to Goelitz, nor the notice, nor any copy or original of the notice ever reached him, or, as far as he knows, ever reached his home in Deerfield, Illinois; that Goelitz did not learn or hear of or see any copy of said notice until three days after February 18, 1933, when the January term of the circuit court had expired; that Goelitz did not learn nor hear from any source of any intention or motion of Hana to withdraw or of any proceeding in the case concerning his withdrawal until three days after February 18, 1933, and until that date Goelitz knew nothing of the trial nor' of the entry of judgment against him in that cause; that three days after February 18, 1933, at Deerfield, Illinois, Goelitz was served by the sheriff of Lake county, Illinois, with a copy of an execution based on the judgment entered in the lawsuit; and that Feb-

ruary 24, 1933, he employed an attorney from whom he received in subsequent conferences accurate information and advice concerning the notice of the motion to withdrew forwarded to him through the United States mail by his attorney Hana, Hana's withdrawal from the case, the trial, and the judgment entered against him.

The bill of complaint was verified by Goelitz and attached to the bill was a verified certificate of his solicitor, Lloyd C. Whitman, in the following form:

"To whom it may concern:

I, the undersigned Lloyd C. Whitman, hereby certify that I am a member of the bar of Illinois, have been engaged in active practice of the law in Illinois for over thirty years, and as attorney at law for Adolph Goelitz, Sr. and for him and on his behalf, I prepared the foregoing bill of complaint; that in so preparing said bill of complaint I had before me a typewritten transcript entitled in said cause number B-230276 prepared by a court reporter, E. M. Franklin, and an affidavit thereto, dated March 28, 1933, by said E. M. Franklin that she, said E. M. Franklin, has been engaged in the business of court reporting for more than ten years, that she reported the testimony and proceedings at the trial of said case number B-230276 to the best of her skill and ability, and caused her report of the same to be transcribed and that said transcript, as she verily believes, is a true and correct transcript of all the testimony offered and proceedings had on said trial. And I further certify that to the best of my information and belief, and in my best judgment as an attorney at law, said bill of complaint correctly and truthfully states and presents all material evidence offered or received, and proceedings had at said trial of said case number B-230276, and that the allegations in that respect of the paragraphs of the foregoing bill

of complaint numbered 4 to 12, both inclusive, are true.

"Lloyd C. Whitman,
Attorney at Law."

Appended to the bill as a part thereof and identified as exhibit "A" was a transcript of the record in the common law action, including the declaration and two additional counts, charging substantially that the corporation, Henkel, Kirkgasser, Best and Goelitz sold stock of the corporation to Lathrop in violation of the Blue Sky law.

We have heretofore reviewed this cause on an interlocutory appeal from the order granting a temporary injunction restraining the collection or the enforcement of the common law judgment against Goelitz, and in affirming that order in *Goelitz v. Lathrop*, 272 Ill. App. 603 (Abst.), the well pleaded allegations of the bill were necessarily considered to be true inasmuch as no answer to the bill had been filed.

Thereafter Lathrop filed his answer to the bill of complaint November 20, 1933, admitting that the judgment was entered February 15, 1933, in his favor against Goelitz and Henkel for $9,450 and costs in the circuit court; that the January term of the circuit court expired February 18, 1933; that the common law action was tried February 14 and February 15, 1933; and that Goelitz was not present at any time during that trial or represented therein by counsel.

The answer denied that the proofs offered and received upon the common law trial were insufficient in law to support the finding or judgment against Goelitz in favor of Lathrop; that the judgment against Goelitz was contrary to the law and to the evidence in that case and that said judgment would be reversed and set aside and a new trial granted Goelitz in the event of review by writ of error, whether or not a bill of

exceptions was available; and that, if a proper bill of exceptions was settled or made available, showing the proceedings and all the evidence offered and received on that trial, it would appear that there was not a scintilla of evidence offered or received to establish any cause of action in Lathrop against Goelitz.

The answer alleged that, while the bill of complaint asserted that Lathrop testified at the trial of the law case that Goelitz was elected a director of Henkel Edge-Lite Corporation at a meeting of its stockholders April 9, 1931, Lathrop's testimony was, in fact, that Goelitz had been a director and stockholder of said corporation for a long time prior to that date and that he was re-elected a director of the corporation at that meeting.

The answer alleged also that Goelitz had been a director and stockholder of the corporation during the entire year of 1930, during the month of February, 1931, and until April 9, 1931, when he was re-elected a director; that in the early part of 1931, prior to Lathrop's purchase of the stock of the corporation and his payment therefor, he was advised by Goelitz that his purchase of said stock would be a good investment and that he would make a profit on it; that Goelitz stated that he would recommend such an investment by Lathrop; and denied that Goelitz had a meritorious defense to Lathrop's demands against him as set forth in cause No. B-230276.

The answer then alleged that Goelitz is now liable to Lathrop on the judgment and was liable prior to said judgment as a director of the corporation and as one who had assisted and abetted in the sale of the stock to defendant; that Goelitz advised, induced and encouraged Lathrop to purchase the stock of the corporation, which was sold to him in violation of the Blue Sky law; and that Goelitz had been a director and vice president of the corporation since its organization.

The answer after denying that for a period of three years, including the date of the institution of cause No. B-230276, Goelitz was so physically and mentally disabled by disease that he was unable to attend to business, asserted that during the said period of time he was in sound condition mentally and interested in several business enterprises, both as an officer and director; that he was not so incapacitated as to be unable to attend to business matters involved in his various enterprises; that at no time was a conservator or guardian *ad litem* appointed for him; that his attorneys have treated him as if he were fully capable of handling his own affairs; that he was well aware that cause No. B-230276 was pending in the circuit court of Cook county; that said cause had been set for trial on December 12, 1932, and that on December 9, 1932, a subpoena was served upon him by Lathrop commanding him to appear to testify in that cause on December 12, 1932, on which date it was set for trial; that at the time of the service of the subpoena Goelitz was given a service and mileage fee of $3.50; that he returned the subpoena to the subpoena server, together with the money, saying "take this back and give it to the poor. I am not going to answer this subpoena anyway"; that at that time he was in his garage at his home in Deerfield, Illinois; that he stated also that he would not appear at the trial because his attorneys had advised him that Lathrop did not have a leg to stand on; that he repeated he would not be present in court and said there was nothing serious in the lawsuit and that "we have Ben [Lathrop] licked now"; that Goelitz did not appear December 12, 1932, and on that date the case was continued to December 19, 1932; and that, thereafter, the case was continued from time to time until December 28, 1932, when Decker & Golden, Goelitz's attorneys, withdrew, one Hana was substituted as the attorney for him and the

other defendants, and, upon Hana's plea of unfamiliarity with same, the cause was continued until January 30, 1933.

The answer further alleged that December 22, 1932, Goelitz communicated with one Selig, a real estate man in the vicinity of Deerfield, Illinois, and stated that he wanted him to draw certain deeds of conveyance; that December. 28, 1932, Selig prepared deeds in and by which Goelitz and his wife conveyed properties described therein, of which they were the owners in joint tenancy; that these deeds purported to convey the said properties to their son, Arthur Goelitz and his wife, Bertha Goelitz, as joint tenants, for a consideration of $10, and that contemporaneously therewith Arthur Goelitz and Bertha Goelitz, his wife, reconveyed the properties for a similar alleged consideration to Anna Goelitz, the wife of plaintiff; that the deeds were recorded the same day in the office of the recorder of deeds of Lake county; that the conveyances were not real but were a sham and made with the intention of defrauding Lathrop and the other creditors of Goelitz; that they were made by Goelitz for the purpose of avoiding an anticipated judgment in the common law action; that said real estate was unincumbered and worth in excess of $20,000; and that no consideration was paid for any of the transfers.

The answer further alleged that January 24, 1933, a notice was forwarded by registered mail by Ralph C. McCoy, one of Lathrop's attorneys, to Goelitz, advising him that Lathrop would be ready for trial when cause No. B-230276 was called on January 30, 1933, and that plaintiff would resist any attempt made by any of the defendants to secure a further continuance; and that this notice reached Goelitz and that he was warned of the pendency of said cause and of the imminence of the trial, both by the subpoena aforesaid and by this notice.

The answer also alleged that the corporation defendant in cause No. B-230276 made representations to Lathrop to adjust the lawsuit and that upon his refusal to do so a petition in bankruptcy was filed while said cause was on the trial call; that, thereafter, an order was entered by the United States District Court restraining Lathrop from proceeding against the corporation; and that January 30, 1933, on account of said restraining order, the corporation was dismissed from the cause.

The answer also averred that after the judgment in the common law action was entered February 15, 1933, Lathrop, desiring to prevent Goelitz from escaping payment on his liability as established by the judgment, filed a bill in aid of execution in the circuit court of Lake county February 20, 1933, asking that the conveyance by Goelitz of his said property be set aside and subjected to the judgment and the execution pursuant thereto; that when the execution on the judgment was served upon him, Goelitz was also served with summons in the Lake county proceeding and with a notice for the taking of depositions on the bill filed therein; and that on March 16, 1933, the depositions of Arthur Goelitz, Bertha Goelitz, his wife, and Edward Selig were taken, and that from such depositions it appeared that the transfers of the Goelitz property were made without consideration and for the purpose of vesting title to the real estate in Lake county in the wife of plaintiff.

The answer further averred that defendant does not know the nature of any physical affliction of plaintiff and denied that such affliction prevented plaintiff from attending to his business matters in regular course and that he was unable to attend to his defense in cause No. B-230276.

The answer then alleged that Decker & Golden withdrew from cause No. B-230276 because of the failure

of defendants, including Goelitz, to pay said attorneys their fees; that Goelitz at no time paid any fee to any attorney purporting to represent him in that cause; that at no time did he pay attorney Leo G. Hana prior to the entry of judgment in that cause and that Hana withdrew as attorney for Goelitz and the other defendants because he had not been paid his fee; that it was incumbent upon Goelitz to employ and pay for an attorney to represent him in said lawsuit and that he failed and refused to do so; that Goelitz did not at any time before the entry of judgment in cause No. B-230276 consult with Hana or with Decker & Golden to prepare the defense of said lawsuit; and that he took slight interest in the lawsuit and left its defense and conduct to his codefendant Henkel, who was present when the judgment was entered against him and Goelitz.

The answer also averred that Lathrop did not know if the notice of Hana's withdrawal was received by Goelitz through the United States mail and demanded strict proof as to his nonreceipt thereof; that the other defendants in said cause, including Henkel, received said notice; that the remaining defendants employed other attorneys, but that Henkel failed to employ an attorney for either himself or Goelitz; that Lathrop by reason of the action of Goelitz's attorney Hana was led to believe that Hana had a right to withdraw from the case and had properly communicated with Goelitz; and that Lathrop at no time did anything in said action to take advantage of Goelitz, but proceeded to trial in due and regular course in ignorance of any claim that might be made by Goelitz that he did not receive the notice of withdrawal mailed to him by his attorney.

The answer also alleged that Goelitz was negligent and disregarded the import of cause No. B-230276; that he had full knowledge of the pendency of said

cause and that its trial was imminent; that he had no defense to said lawsuit, and, fearing that judgment would be rendered against him, made the aforesaid conveyances of his property while the cause was on the trial call; that Goelitz placed the conduct of that cause in the hands of his codefendant Henkel, against whom judgment was also rendered; that Henkel knew that the cause was pending on the trial call and knew that no attorney had been paid to defend Goelitz or himself; that Goelitz, by the receipt of the registered letter aforesaid and by the service of the subpoena heretofore referred to was acquainted by Lathrop with the pendency of the proceeding; that he did not obey the subpoena nor appear in court in response thereto nor did any one appear for him in response to said subpoena at any time; that he disregarded such subpoena and stated, in effect, that it was meaningless; that he disregarded the notice advising that further continuance would be opposed; that it was the duty of Goelitz to use the highest degree of diligence in protecting his interests in the lawsuit and that he did not use any diligence, but on the contrary was grossly negligent; that he had full knowledge of the entry of the judgment; that he failed to take steps to relieve himself of same until April 7, 1933, when his bill was filed in the instant case; and that he was guilty of laches.

Defendant Lathrop contends that Goelitz did not come into equity in good faith and with clean hands; that his bill of complaint contains false and deceptive allegations which misled the chancellor, who issued the temporary injunction, and misled this court on the interlocutory appeal from the order granting the temporary injunction; that by the evidence produced before the master it was conclusively shown that Goelitz was guilty of negligence in the common law suit and defiant of the court proceedings; that the evidence also

showed that Goelitz was unworthy of belief; that his flimsy excuse that notice of the withdrawal of his attorney Hana in the common law action never reached him, which was of necessity admitted on the interlocutory appeal, was completely discredited by the testimony; that Goelitz's agent, Henkel, was present when the judgment was entered in the common law action; that Goelitz actually assisted in the plan concocted by Henkel to cheat Lathrop by the fraudulent sale of the corporation's stock; and that, having been grossly negligent in failing to take proper steps to protect himself against the common law judgment, Goelitz cannot now secure a review of same by bill of exceptions or otherwise.

Plaintiff's theory as stated in his brief is that he "was only required to show by way of 'meritorious defense' probable cause, as it may be phrased, for suing out a writ of error from the Appellate Court to review the common law judgment . . . or, at most, a defense on the merits of the common law case sufficient to entitle complainant to go to a jury on trial of those issues"; that "the chancery court no more had power actually to determine and finally adjudicate the issues in the common law case than to determine and finally adjudicate whether there was prejudicial error in the trial of the common law case—unless and until Lathrop should voluntarily elect to submit the merits of his, Lathrop's, claim in the common law case to the chancery court for final determination and adjudication"; that "this Lathrop elected to do, thus eliminating all other issues from the case and on these issues the master, as well as the chancellor, found for complainant and properly so"; that the effect of Lathrop's election to submit his claim in the common law court to the chancery court was to waive all questions except Lathrop's right to recover from Goelitz on account of Lathrop's purchase of stock of the Henkel Edge-Lite

Corporation; and that "as to the supposed other issues in this cause, as they were before Lathrop elected to confess them and go to trial on the merits of Lathrop's claim in the common law case, the proofs are not substantially different from the allegations of the bill of complaint, which on interlocutory appeal this . . . court held sufficient."

The theory upon which Goelitz's bill of complaint predicated his right to relief from the common law judgment is that he "had no knowledge that said trial [resulting in the judgment] was taking place or had taken place . . . until . . . after the expiration of the term of said Circuit court, at which said trial was had and judgment entered"; and that by reason of the accidental miscarriage of the United States mail, resulting in its failure to deliver to him Hana's notice of withdrawal as his attorney in the law action, Goelitz was deprived of a bill of exceptions necessary to enable him to secure a proper consideration of the judgment and review of same by writ of error.

As heretofore stated the temporary injunction in this cause was issued by the chancellor solely on the allegations of plaintiff's bill of complaint and that restraining order was affirmed by us solely on the face of that bill.

It now appears, however, that, while the bill alleged that Goelitz "never knew or heard of any offer of sale or sale to said Lathrop of any capital stock or securities issued or to be issued by said Henkel Edge-Lite Corporation until sometime, to-wit, 30 days after the institution . . . of said case No. B-230276 [the common law suit]," he testified that when he was served with summons in that action he already knew that Lathrop had purchased stock in the corporation; that, while his verified bill alleged that Goelitz "was not present in said court at any time during said trial or represented in said court by any attorney, either at

law or in fact'' and ''at no time during said trial was said Adolph Henkel . . . present either in person or by counsel,'' it was stipulated on the hearing of the instant case that Henkel was present when the judgment was entered in the common law action and Goelitz testified that he left it to Henkel to take care of that case for him; that, while plaintiff's bill alleged that the only evidence offered concerning him in the common law case was the testimony of Lathrop that April 9, 1931, Goelitz attended a meeting of the stockholders of the corporation, at which meeting he was elected a director of same and that he was a stockholder and director of the company, the transcript of the evidence in that case discloses that Lathrop testified that Goelitz was *re-elected* a director of the corporation at the meeting of its stockholders April 9, 1931 (the stock was delivered to Lathrop February 27, 1931). Not only did Goelitz allege in his bill that Lathrop testified on the trial of the lawsuit that Goelitz was elected a director rather than re-elected a director of the corporation April 9, 1931, but it was strenuously urged in his brief on the interlocutory appeal that ''counsel would have this court believe that the trial court actually held that Goelitz was liable merely because sometime after the sale he became a director of the Henkel Edge-Lite Corporation (p. 13). . . . The occasion—occasions of his loss of a bill of exceptions were many: One was that after Lathrop bought his stock in the Henkel Edge-Lite Corporation Goelitz became a director of the company.'' It should be added that Goelitz testified in this cause that he was vice president and director of the corporation since its organization.

It also now appears that while the bill of complaint alleged that December 28, 1932, Henkel advised Goelitz that he was employing Hana, who would be substituted as attorney in the law case for Decker & Golden, who had withdrawn, and that although Goelitz did testify

in one instance in this cause that Henkel told him he had employed Hana when Decker & Golden withdrew, he also testified that Henkel did not tell him that he had employed another lawyer and that he did not know who employed Hana as a lawyer until after he was served with the execution on the common law judgment and went to Waukegan in February, 1933; that while Goelitz's verification to his bill of complaint states *inter alia* that he "had no knowledge that said trial was to take place, was taking place or had taken place until sometime after February 18, 1933," the last day of the January term at which the judgment was entered, the evidence presented to the master demonstrated beyond peradventure of a doubt that he had actual notice of the imminence of the trial from the subpoena personally served upon him December 9, 1932, at Lathrop's instance, commanding his presence at the trial of the common law action December 12, 1932, and from the notice forwarded to him at his home by registered mail on January 24, 1933, by one of Lathrop's attorneys and receipted for by one C. Goelitz (a daughter, Carlotta, lived with Goelitz), advising that he would oppose any further continuance beyond January 30, 1933, on which date the case had been reset for trial; and that, while the prayer of the bill was, in general terms, to restrain Lathrop from collecting or enforcing or attempting to collect or enforce his judgment, no mention was made in the bill of the proceeding brought in Lake county by Lathrop in aid of the execution on his judgment.

May 25, 1934, the master to whom this cause was referred generally January 15, 1934, reported to the chancellor the evidence submitted to him and his conclusions of law and fact on the issues involved.

The master found that Lathrop did not clearly establish his claim in the common law action in which judgment was entered February 15, 1933; that, while there

is no denial that the corporation was insolvent when the stock was sold to Lathrop and that the sale of same was in violation of the Blue Sky law, Goelitz's legal liability was not satisfactorily established; that the fact that he was a director of the corporation and the further fact that February 14, 1931, upon being advised that Lathrop had invested and might invest more money in the corporation, he "told Lathrop that he was glad to see him come into the corporation and that he believed he would make money" did not constitute legal liability on the part of Goelitz.

The master further found that "the law is well settled in this state that before equity will interfere by issuing an injunction to restrain the collection or enforcement of a judgment at law it must appear that the judgment was rendered without the fault or negligence of the party seeking relief. This the complainant has failed to show. On the contrary he stands convicted of every form of negligence, total disregard and wilful and deliberate defiance of the process of this court. . . . It is the contention of the complainant's solicitor that by reason of the complainant's failure to receive the notice of the withdrawal of the attorney aforesaid (Hana) the complainant was left without counsel at the common law trial and so lost his chance to procure a bill of exceptions. He argues that the loss of the bill of exceptions is the injury and the complainant's failure to receive the notice is the cause of the injury; that the expiration of the term is a circumstance—a part of the occasion, but is not a cause of the injury. He insists that the judgment is unconscionable and therefore the defendant herein should be restrained from enforcing it unless and until the said defendant enters into the necessary stipulation in the law court to give complainant a bill of exceptions of which he has been accidentally deprived, so that he might have an unconscionable judgment re-

viewed by the Appellate Court on writ of error, . . . In view of the findings and conclusions hereinbefore contained the master cannot and does not agree with the contentions, logic and arguments of the complainant's solicitor. Complainant's failure to be present in court at the time the cause was tried and the judgment rendered was not occasioned by any accident, mistake, fraud or inadvertence, but through sheer willfullness and deliberate negligence and defiance on the part of the complainant, and the master concludes that a court of equity should not help the complainant in this cause.''

The report concluded that Goelitz had failed to prove the allegations of his bill of complaint and recommended that the temporary injunction theretofore issued be dissolved and that his bill of complaint be dismissed for want of equity.

The master overruled Goelitz's 52 objections (92, counting their subdivisions) to his report. These objections, ordered to stand as exceptions to the report, were set for hearing before the chancellor, and, notwithstanding their number, complexity and the fact that many of them were argumentative in nature, were all ''sustained and allowed.''

This history of the cause, including the pleadings, the substance of the master's report and the contentions of the parties, which has been set forth at length for a proper understanding of the issues, leads us to what Goelitz strenuously insists is not only the major but the only question in the case, namely, that by offering evidence before the master as to the merits of his claim against Goelitz in the common law action, Lathrop voluntarily elected to submit the merits of that claim to the court of equity for final determination and adjudication, and that both the master and the chancellor having properly found that Goelitz's legal liability in connection with the sale of the stock to

Lathrop was not satisfactorily established, the decree should be affirmed.

In the former appeal it was not necessary to pass upon the liability of a director merely because he was a director of a corporation whose stock was sold in violation of the Blue Sky law, inasmuch as that appeal was determined solely on the face of the bill, which alleged that Goelitz was not elected a director until several months after the sale of the stock in controversy.

While in our prior opinion we questioned whether a director of a corporation who had not participated in or knowingly furthered in any way the sale of its stock in violation of the Blue Sky law could be held liable merely because he was a director at the time of the sale, after carefully reconsidering the matter we are now convinced that the Legislature contemplated that liability should attach to all who were directors of a corporation when its stock was sold in violation of the said law, and had knowledge or were chargeable with knowledge of such sale.

The pertinent portion of the statute (Cahill's 1931 Ill. Rev. Stats., ch. 32, par. 290, sec. 37, subsec. 1) upon which the liability of Goelitz is predicated, is as follows:

"(1) Every sale and contract of sale made in violation of any of the provisions of this Act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, in an action at law or in equity, upon tender to the seller or in court of the securities sold to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery."

In relating the history of this statute in *Perkins v. Dole,* 240 Ill. App. 20, this court said at p. 25:

"In section 37 of said Act of 1919 [Callaghan's 1920 St., p. 2675 (37)] it is provided: 'Every sale and contract of sale made in violation of any of the provisions of this Act shall be void and the seller of the securities so sold, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, together with his reasonable attorney's fees in any action brought to recover such amount.' This section was amended by the amendatory act of 1921 by interpolating certain new clauses and by adding four new subsections (Laws 1921, p. 364). The old section 37, as changed, became subsection 1 of the new section 37. The changes were as follows: After the words 'shall be void,' in the second line, the words 'at the election of the purchaser' were added; after the words 'and the seller of the securities so sold,' and before the words 'and each and every solicitor, agent or broker of or for such seller,' the words 'the *officers* and directors of the seller' were inserted; after the words 'shall be jointly and severally liable' were added the words, 'in an action at law or in equity.' "

In so far as we have been able to ascertain the construction of this statute as to the liability of officers and directors of a corporation, the stock of which has been sold in violation of the Blue Sky law, solely on the ground that they were such officers and directors at the time of the sale, is a matter of first impression in this State. From a grammatical standpoint, with due regard for punctuation, the natural and reasonable interpretation would seem to be that the liability of an officer and director, such as Goelitz was, is just as absolute as is that of the seller of the securities.

It will be observed that the clause commencing with "who shall have knowingly performed" obviously relates to the words "each and every solicitor, agent or broker of or for such seller," which are inclosed in commas immediately preceding that clause. It surely was not intended that the "knowingly performed" clause would modify or apply to the "seller of the securities." When the act was amended to include "officers and directors of the seller," in our opinion, they were not only placed in the same grammatical category "as the seller," but we think that it was contemplated that liability should attach to them in the event of the sale of stock in violation of the Blue Sky law by reason of their presumed knowledge of such sale. If it had been the purpose of the Legislature to simply add "the officers and directors of the seller" to the group, "every solicitor, agent or broker of or for such seller," who could only be held liable if they had "knowingly performed any act or in any way furthered such sale," it would have been an easy matter to have had the statute as amended read "and each and every officer, director, solicitor, agent or broker of or for such seller who shall have knowingly performed any act or in any way furthered such sale."

We perceive nothing unfair or unconscionable in a construction of this statute which imposes liability on the officers and directors of a corporation where the proceeds of the sale of its stock in violation of the Blue Sky law inure to the benefit of such corporation. It is undisputed that the stock was sold to Lathrop in violation of the Blue Sky law and it is undisputed that when it was sold to him the corporation was insolvent. It is also undisputed that the $8,250 paid by Lathrop to Henkel for the stock was credited to Lathrop on the books of the corporation as payment for a stock subscription and deposited in the corporation's bank account. It was then disbursed in payment of some of its overdue accounts.

It will be noted from the language of the *Perkins* case, *supra,* that under the terms of the original securities act of 1919 there was no reference at all to officers and directors. If it were not intended by the Legislature to attach liability to officers and directors for the sale of corporate stock in violation of the securities act unless they were actually sellers of the securities or "knowingly performed any act or in any way furthered such sale," it was entirely unnecessary to amend the act to specifically mention them. If an officer or director was the actual seller, he, of course, was liable, and if he knowingly aided or furthered such sale in any manner, the act was sufficiently comprehensive as it stood to include him. We think that the act was amended in 1921 to cure what had been discovered by experience to be a fatal weakness in that as originally enacted it afforded officers and directors of corporations whose securities were illicitly sold an avenue of escape from liability on the pretext of ignorance of the particular sale. We also think that by amending the act in 1921 by interpolating "the officers and directors of the seller," the Legislature evinced an intention to place violators of the act in three separate and distinct classes: (1) Actual seller; (2) officers and directors of the seller; and (3) solicitors, agents or brokers of the seller "who shall have knowingly performed any act or in any way furthered such sale." A director of a corporation is surely chargeable with knowledge that its stock has not been qualified for sale under the Blue Sky law, and that it was being sold in violation thereof, where the proceeds of the sale go to such corporation, and he is also chargeable with knowledge of its financial condition. (14 A. C. J., sec. 1867; *Moody v. Chicago Title & Trust Co.,* 126 Ill. App. 68.) This being so, where the proceeds of the sale of the stock went to the corporation as they did here, and where the corporation was insolvent, as this

was, we know of no principle of law that affords a basis for construing the statute otherwise than that the director is liable whether he participated in or knowingly aided or furthered the individual sale or not.

In addition to the fact that Goelitz was an officer and director of the Henkel Edge-Lite Corporation at the time that Henkel sold the stock to Lathrop, evidence was produced before the master that February 14, 1931, the day after Lathrop had made his initial payment of $2,500 to Henkel, Henkel took Lathrop and one Becker to Goelitz's home and there stated: "I want to introduce you to a big shot in the company. Mr. Goelitz is vice president and a member of the board of directors; . . . that Mr. Lathrop had invested some money, he expected to invest more and Becker expected to invest some"; and that Goelitz said "I am very glad to meet you gentlemen and I think you made a very fine investment and you are going to make a pot of money." Goelitz contradicted this testimony, but admitted that Henkel brought Lathrop and Becker to his home on the occasion in question and that a conversation between the parties ensued which lasted two or three hours. Thereafter, on February 27, 1931, Lathrop paid Henkel $5,750 more and received the stock of the corporation. It thus appears that Goelitz at least encouraged Lathrop to believe that his investment with the corporation would be profitable.

The evidence disclosed that while the action at law was pending and a short time before judgment was entered therein, Goelitz conveyed real estate belonging to him in Lake county to his son and daughter-in-law; that it was simultaneously deeded back to his wife and that all the conveyances were without consideration. It is urged that Goelitz sought by this means to render himself judgment proof and that his conduct

in this regard constituted an admission of his guilt. While no case in this State has been called to our attention where this question has been determined, it is generally held that the basic principle underlying the admission of this character of testimony is that it tends to show consciousness on the part of a defendant that he is legally liable for the damages incurred by another and sought to be recovered. (Wigmore on Evidence, 2nd ed., vol. 1, sec. 282; *Pelkey v. Hodgdon,* 102 Me. 426, 67 Atl. 218; *Harmon v. Haas,* 61 N. D. 772, 241 N. W. 70, 80 A. L. R. 1131.)

We are of the opinion that both the master and chancellor erred in failing to find that Lathrop made out at least a *prima facie* case in the common law action, and that if Goelitz's theory is correct that the merits of the controversy were before the chancellor for determination his liability under the statute was sufficiently established in the instant case.

The next question presented is whether Goelitz was guilty of such negligence in connection with Lathrop's common law action against him as to preclude him from the relief sought in this proceeding, even though he was otherwise entitled to it. The rule is universal that a party seeking to enjoin a judgment or the collection of a judgment must be free from all negligence and must have used the highest degree of diligence in the cause in which the judgment at law was entered. In *Cairo & St. L. R. Co. v. Holbrook,* 92 Ill. 297, the court said at p. 301: "The doctrine has been uniformly held, that where a party has been served with process and neglects to make his defense, he cannot invoke the aid of a court of equity to grant him relief." In *Ward v. Durham,* 134 Ill. 195, the court used this language at p. 202: "The loss of a defense, to justify a court of equity in removing a judgment, must in all cases be occasioned by the fraud or act of the prevailing party, or by mistake on the part of the losing

party, unmixed with any fault of himself or agent." In *Kretchmar v. Ruprecht*, 230 Ill. 492, the court said at pp. 493, 494: "It is immaterial to the decision of this case whether they had a valid defense or not. They had ample opportunity to present it if they had one, but without any reasonable excuse they neglected to do so. Equity will not relieve against a judgment at law except in cases of fraud, accident or mistake, and then only where the party applying for relief is free from all negligence."

The judgment at law was entered against Goelitz and Henkel February 15, 1933, in the action brought by Lathrop that had been pending since October 9, 1931. Henkel was present in the trial court when it was rendered. It conclusively appears that when Goelitz was served with summons he intrusted his defense of Lathrop's action to his codefendant Henkel. Henkel advised Goelitz that he had retained Decker & Golden as attorneys to represent all the defendants. Decker & Golden filed their own and the appearance of all the defendants December 9, 1931. Plaintiff's motion of April 20, 1932, to place the cause upon the trial calendar was strenuously opposed. It was finally placed on the trial call November 18, 1932, over defendants' objections. Goelitz was personally served with a subpoena December 9, 1932, to appear and testify at the trial of the cause. He did not appear. An endeavor was made to serve a second subpoena upon him, but a member of his household stated that he was asleep and could not be disturbed. December 28, 1932, Decker & Golden withdrew from the cause as defendants' attorneys. Attorney Leo G. Hana was substituted as their attorney and the case was continued for trial to January 30, 1933. Henkel advised Goelitz that he had retained Hana. January 19, 1933, Hana filed proof of service of notice on all the defendants of his motion for leave to withdraw from the case.

Hana was granted leave to withdraw January 19, 1933, and the cause continued for trial to January 30, 1933. January 24, 1933, Lathrop's attorney McCoy mailed a registered letter with a request for a return receipt to Goelitz at his home in Deerfield, Illinois, advising that further continuance would be opposed when the cause was called for trial January 30, 1933. McCoy received a return receipt signed ''C. Goelitz.'' Henkel retained no other lawyer, either for Goelitz or himself. The trial of the common law action commenced February 14, 1933, and upon its conclusion the judgment was entered February 15, 1933, at which time Henkel was present. February 20, 1933, Goelitz was served with an execution on this judgment and also with summons in a proceeding brought by Lathrop in Lake county in aid of the execution, which proceeding sought to set aside the conveyance of his property alleged to have been fraudulently made by Goelitz so that same would not be subject to execution on Lathrop's judgment.

Goelitz's right to the injunctive relief sought in the instant case was and is predicated solely on his assertion that he did not receive Hana's notice of withdrawal as his attorney in the common law action because of the accidental miscarriage of the United States mail, which failed to deliver such notice to him although the envelope containing same was properly addressed, stamped and mailed.

Goelitz strenuously insists that Henkel was his agent only to the extent of securing an attorney to defend him against Lathrop's action at law, and that Henkel having advised him that attorney Hana was looking after his defense and not having received Hana's notice of withdrawal or any information concerning same, he had a right to rely on Hana to protect his interests in the lawsuit and was not negligent in so doing.

On the record now before us this contention is without merit and neither fallacious argument nor far fetched theories can change or overcome the facts. The evidence conclusively shows that Goelitz not only intrusted his defense of the common law action in its entirety to Henkel, but that he insisted that it was Henkel's duty to arrange for such defense. Goelitz testified in no uncertain terms that he "left it all to Henkel." It is idle to urge, merely because Henkel told Goelitz on one occasion that Decker & Golden represented the defendants and on another that Hana was their attorney, that Henkel's agency to look after Goelitz's defense was restricted to securing an attorney for him. From the facts in the record it is entirely immaterial whether or not an accidental miscarriage of the mail resulted in Goelitz's failure to receive Hana's notice of withdrawal. Henkel had been theretofore charged with arranging for Goelitz's defense. Henkel received Hana's notice of withdrawal. Henkel employed no other attorney to represent either Goelitz or himself. Henkel was present when the judgment at law was entered and represented Goelitz at that time. If a litigant authorizes another to look after his defense of the action generally and an attorney is not employed or other proper and necessary measures taken, no relief can be had in equity in the absence of actual fraud. (53 A. S. R., p. 449; *Neville v. Pope,* 95 N. C. 346.) Courts of equity will not grant relief merely upon the ground of accident where the accident has arisen without fault of the other party, if it appears that the damage alleged to have been caused by the accident might have been avoided by inquiry or due care. (1 Story Eq., 9th ed., sec. 105; *United States v. Ames,* 99 U. S. 35, 25 L. ed. 295.)

The judgment at law was obtained at the conclusion of a two-day trial, after repeated continuances, Goelitz having theretofore been represented in the lawsuit

by the attorneys heretofore mentioned, procured by Henkel, none of whom had been paid. Not only can no sharp practice be attributed to Lathrop in the common law case, but on the contrary his attorney actually served Goelitz with a subpoena in that cause on one occasion and a week later attempted to have him served with another subpoena, and then, after Hana's withdrawal, mailed him a registered letter to his home, advising that the cause was set for trial January 30, 1933, and that further continuance would be opposed. No amount of specious reasoning can alter the effect of the evidence and only through such reasoning could any conclusion other than that Goelitz was grossly negligent in his defense of Lathrop's action at law against him be reached.

We have heretofore indicated several respects in which the allegations of the bill of complaint were either untrue or misleading and calculated to be deceptive. In other respects pertinent material facts were disclosed upon the hearing before the master to have been within Goelitz's knowledge when the bill was drawn which were omitted therefrom, and we have no hesitancy in stating that if the facts presented by the record now before us had been contained in the allegations of the bill of complaint upon which alone the interlocutory appeal was decided, we must have reached the same conclusion in determining that appeal as we do here on the question of Goelitz's negligence.

Other points are urged, but in the view we take of this cause we deem further discussion unnecessary.

The motions heretofore filed by Lathrop and reserved to hearing for leave to amend his answer and to produce further testimony in this court are at this time denied.

For the reasons indicated herein the decree of the circuit court is reversed and the cause is remanded

with directions to dissolve both the permanent and temporary injunctions and to dismiss plaintiff's bill of complaint for want of equity.

*Reversed and remanded with directions.*

FRIEND and SCANLAN, JJ., concur.