Henry WEIDNER and Hertha Weidner, Plaintiffs and Appellants,

v.

Ed ENGELHART [Engelhardt], P. W. Blank, Charles Tighe, Matt G. Koffler, H. E. Sondreal, P. W. Lanier, Ray Lorenz, George Letvin, John Zoller, Gilbert Saxowsky, State Acceptance Corporation, the Liberty National Bank and Trust Company, Paul McCann Company, a partnership, Paul McCann and Company, a partnership, Orser, Olson, Wolfe & St. Peter, a partnership, and St. Paul Fire & Marine Insurance Company, a corporation, Defendants,

and

P. W. Blank, Charles Tighe, H. E. Sondreal, P. W. Lanier, Ray Lorenz and George Letvin, Defendants and Respondents.

Civ. No. 8577.

Supreme Court of North Dakota.

March 20, 1970.

Rehearing Denied April 29, 1970.

Freed, Dynes & Malloy, Dickinson, and William G. Lince, Elgin, for plaintiffs and appellants.

Vogel, Bair & Graff, Mandan, for respondent Charles Tighe.

Wattam, Vogel, Vogel & Peterson, Fargo, for respondent P. W. Lanier.

Thompson, Lundberg & Nodland, Bismarck, for respondent P. W. Blank.

R. W. Wheeler, Bismarck, for respondent H. E. Sondreal.

Fleck, Smith, Mather, Strutz & Mayer, Bismarck, for respondent Ray Lorenz.

Floyd B. Sperry, Bismarck, and Robert B. Baird, Dickinson, for respondent George Letvin.

TEIGEN, Chief Justice.

This is an appeal from multiple summary judgments dismissing six directors of State Acceptance Corporation from an action commenced by the purchasers of stocks, promissory notes, and subordinate debentures (securities), issued by the corporation and alleged to have been sold to them in violation of certain provisions of the Securities Act. Chapter 10–04, N.D. C.C.

The corporation had nine directors. Zoller has defaulted and two, Koffler, the vice-president who was also the general manager of the corporation, and Saxowsky, the president of the corporation, are not involved in this appeal. There are also other defendants named in the action who are not involved in this appeal. They are the two salesmen, Engelhardt (also spelled Engelhart in these cases) and Hewson, who sold the securities, the auditors, who are alleged to have prepared and released false statements of the corporation's financial condition, the Liberty National Bank and Trust Company, which acted as trustee for the debenture issues, and the St. Paul Fire and Marine Insurance Company, which issued its bond guaranteeing that the corporation and its agents, employees and salesmen would comply with the Securities Act.

There were five actions brought by different purchasers and the facts as to the alleged violations of the Securities Act and the object of the actions are, generally, the same in each case. Two of the directors

involved in this appeal were not named as defendants in three of the cases. However, this opinion is also applicable and decisive in each of the other cases.

The securities sold, because of the bankruptcy of State Acceptance Corporation, have become worthless and the plaintiffs, as purchasers, seek to recover the amount paid for the securities.

The plaintiffs allege the sales were made in violation of the Securities Act in that the salesmen who sold these securities were not licensed; a number of the sales were made after May 1, 1964, when the State Acceptance Corporation was no longer a registered dealer; a number of the sales were made after the registration of the securities had expired; the salesmen, in making the sales, made various untrue statements of material facts and omitted to state material facts necessary to make statements by them not misleading; and false information was disseminated by financial reports prepared by the company's auditors.

The plaintiffs, in addition to claiming that the directors are liable for their part in authorizing the sales, also contend that they negligently and improperly attended to the business affairs of the corporation, did not properly supervise the sales, and did not properly determine the legality of the issues. The alleged participation is the same on the part of all of the directors involved in this appeal except as to the respondent Ray Lorenz, who was also secretary of the corporation and affixed his signature to the securities in question.

The plaintiffs premise their first claim on Section 10–04–17, N.D.C.C., and allege, as a second claim, that conduct by the directors operated as a fraud and deception on the plaintiffs, entitling them to recover.

Section 10–04–17, N.D.C.C., is as follows:

"*Remedies.*—Every sale or contract for sale made in violation of any of the provisions of this chapter, or of any order issued by the commissioner under any provisions of this chapter, shall be voidable at the election of the purchaser. The person making such sale or contract for sale, and every director, officer, salesman, or agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser in any action at law in any court of competent jurisdiction upon tender to the seller, in person or in open court, of the securities sold or of the contracts made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section. Provided:

"1. That no action shall be brought under this section for the recovery of the purchase price after three years from the date of such sale or contract for sale nor more than one year after the purchaser has received information as to matter or matters upon which the proposed recovery is based; and

"2. That no purchaser shall claim or have the benefit of this section if he shall have refused or failed to accept, within thirty days from the date of such offer, an offer in writing of the seller to take back the securities in question and to refund the full amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed:

"a. In case such securities consist of interest-bearing obligations, at the same rate as provided in such securities; or

"b. In case such securities consist of other than interest-bearing obligations, at the rate of five per cent per annum; less, in every case, the amount of any income from such securities that may have been received by such purchaser.

"3. Nothing in this chapter shall limit any statutory or common law right of any person in any court for any act involved in the sale of securities."

■ The second claim alleges fraudulent practices. In the plaintiffs' briefs they state the claim is based on Section 10–04–15, N.D.C.C., and they argue that this section provides a basis for a remedy separate and apart from Section 10–04–17, N.D.C.C. Therefore, they argue that the three-year and one-year limitation periods set forth in subsection (1) of Section 10–04–17, N.D.C.C., are not applicable to the second claim. We do not agree. Section 10–04–15, N.D.C.C., defines fraudulent practices under the Securities Act. It is one of the "provisions of the chapter" upon which Section 10–04–17, N.D.C.C., is premised, allowing a purchaser of securities sold to him in "violation of any of the provisions of this chapter," if he so elects, to recover the amount paid, taxable costs, and reasonable attorney's fees. The plaintiffs cite Adams v. Little Missouri Minerals Association (N.D.1966), 143 N.W.2d 659, in support of their argument. In that case we held that nothing in Chapter 10–04, N.D.C.C. (Securities Act), limits any statutory or common-law right of any person in any court for an act involved in the sale of securities, which is a restatement of the saving clause found in subsection (3) of Section 10–04–17, N.D.C.C., and, therefore, we concluded that Section 10–04–17, N.D.C.C., does not bar a purchaser of securities from bringing an action based on fraud or contract apart from the remedies of the act. The fraud claim in that case was not based on Section 10–04–15, N.D.C.C., and does not support the plaintiffs' contention.

If Section 10–04–17, N.D.C.C., is to have any meaning it must be construed as defining the remedy available to purchasers of securities where the sale is made in violation of *any* of the provisions of the Securities Act. It, therefore, covers all of its provisions. To support an action for recovery based on the general statutory or common-law fraud, the acts must be such as would support actionable fraud in and of themselves without the assistance of Section 10–04–15, N.D.C.C. The acts may also be violations of the Securities Act but they must be such acts that, by themselves, constitute actionable fraud. Therefore, in view of the theory advanced in plaintiffs' argument, we construe the plaintiffs' second claim as being governed by Section 10–04–17, N.D.C.C., for the purposes of these summary judgment proceedings. We do not pass on what legal theory may support the claim after the evidence is produced on trial.

The director-defendants who were dismissed from the action on summary judgment proceedings, from which this appeal is taken, will hereafter be referred to as the "directors".

The directors, Lorenz, Blank, Sondreal, Letvin, Lanier and Tighe, individually sought summary judgments of dismissal on the grounds that there was no material issue of fact as to any genuine issue and that they were entitled to a judgment of dismissal as a matter of law. Both parties submitted proofs in support of, and in resistance to, the motions. The trial court, by summary judgments, dismissed the directors from this action. It found that there was no genuine issue of material fact and that there was no just reason for delay, under Rule 54(b), N.D.R.Civ.P., in directing entry of judgment dismissing the complaint against the directors, and that the directors were entitled to a judgment dismissing the complaint against them as a matter of law. The court based its decision on the conclusion that the record establishes that the directors had not participated or aided in the alleged sales and the fact that they were directors would not alone sustain a finding that they participated or aided in such sales.

■ The thrust of the appeal evolves around the issue of whether summary judgment was proper. Whether summary judg-

ment was proper depends upon whether or not any genuine issue of material fact exists. Rule 56(c), N.D.R.Civ.P. The moving party is entitled to a summary judgment if it appears that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Temme v. Traxel (N.D.), 102 N.W.2d 1; Heasley v. State (N.D.), 115 N.W.2d 334; Mondy v. Gjesdal (N.D.), 123 N.W.2d 33.

■ The party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact and the evidence will be construed in favor of the party against whom the motion is made. Mondy v. Gjesdal, supra.

The directors, for the purpose of the summary judgment proceedings, admit that there may have been violations of the Securities Act. They do not deny that the two salesman were not licensed nor that they made misrepresentations to the purchasers. They do not deny that the sales of securities were made by the salesmen after the corporation's registration as a dealer had expired, nor that some of the sales of securities were made after the registration of the securities had terminated. Further, they do not deny that false information was disseminated in the financial reports prepared by the company's auditors and by the salesmen. The position taken by the directors is not to deny the alleged violations of the Securities Act but to contend that they, the directors, had no knowledge of these violations and innocently believed that the financial reports compiled by the corporation's independent auditing firms correctly stated the financial condition of the corporation, and they argue that the directors have not participated or aided, in any way, in making any of the sales in question. Plaintiffs do not admit the claimed ignorance of the directors pertaining to the Securities Act violations by the corporation, its officers and salesmen, nor that they relied upon the accuracy of the financial statements.

It is the contention of the plaintiffs that the directors all served as directors at the time the securities were authorized and sold, and that they were still serving on the Board of Directors for State Acceptance Corporation when it went into bankruptcy in December, 1966. One exception is noted and that is that the director Lorenz served as secretary of the corporation during this period and, as such, his facsimile signature was affixed to each security. In addition to claiming that the directors are liable for their part in authorizing the issuance of the securities sold and approving and ratifying all acts of the officers and the general manager of the corporation between various directors' meetings, the plaintiffs claim they are liable because they negligently and improperly attended to the business affairs of the corporation and did not properly supervise the sales or properly determine the legality thereof. It is admitted that virtually the entire control of the corporation, during the time in question, was placed in the hands of the executive vice-president and general manager, Koffler, and plaintiffs argue that the directors cannot escape liability for actions taken by him because of their negligence and inattentiveness to duty that permitted him such a free rein.

The legal questions propounded by the summary judgment proceedings are as follows: Are corporate directors personally liable to purchasers of corporate securities sold in violation of the Securities Act because of their position as directors of the corporation; or may lack of diligence or negligence in failing to discover securities violations committed by corporate management officers, or employees, under certain circumstances, constitute participation or aid in any way in making sales of securities so as to render directors personally liable; and must affidavits of moving parties, filed in support of a motion for summary judgment and relating to matters peculiarly within the moving party's own mind and control, be accepted as conclusive?

Section 10–04–17, N.D.C.C., gives a purchaser of securities the right, at his election, to void any sale of securities made to him in violation of any of the provisions of Chapter 10–04, N.D.C.C. He is also given the statutory right to recover from the seller, and others denominated therein, the full amount paid, together with all taxable costs and reasonable attorney's fees.

The salient part of this section, in question in this proceeding, is the following:

"The person making such sale or contract for sale, and every director, officer, salesman, or agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser * * *"

The plaintiffs argue that the proper construction of this portion of the statute requires that every director, regardless of whether he participated or aided in any way, is made liable. The plaintiffs break the sentence down into parts and conclude that the expressed legislative intent is to allow this type of action against any and all in the following categories:

1. The person making such sale or contract for sale;

2. Every director;

3. Every officer;

4. Every salesman; and

5. Every agent of or for such seller who shall have participated or aided in any way in making such sale.

We do not agree with the plaintiffs' interpretation of the statute.

■ Section 10–04–02(6), N.D.C.C., defines the word "person". It states:

" 'Person' shall mean an individual, a corporation, a partnership, an association, a joint stock company, a trust, or any other unincorporated organization."

We are dealing here with the securities issued by a corporation. Thus the word "person" has reference, for the purposes of this case, to the corporation making such sale or contract for sale. The sentence then joins with the corporation, by the use of the conjunction "and", every director, officer, salesman, or agent of or for such seller (the corporation) who shall have participated or aided in any way in making such sale, and provides they shall be jointly and severally liable to the purchaser. The clause "who shall have participated or aided in any way in making such sale" modifies "every director, officer, salesman, or agent of or for such seller." Therefore, to establish liability on the part of this latter category, it becomes necessary to establish that they participated or aided in some way in making the sale. Thus it appears there is expressed a clear, legislative intent to make the corporation strictly liable, in the first instance, and, if any of the named officers or employees of the corporation "participated or aided in any way in making such sale," they also became jointly and severally liable to the purchaser. For these reasons, we construe Section 10–04–17, N.D.C.C., to require proof of participation or aid in order to hold a director, officer, salesman or agent liable to a purchaser of securities sold in violation of the Securities Act.

The plaintiffs cite Goelitz v. Lathrop, 286 Ill.App. 248, 3 N.E.2d 305, in support of their position. This case holds a director of a corporation absolutely liable to the purchaser of stocks sold in violation of the Illinois Blue Sky Law for the amount paid for the stock whether he participated in, or knowingly aided or furthered in, the sale of the stock or not. However, an examination of that case discloses that the Illinois statute, which the court interpreted and applied, was quite different from our statute. The pertinent portion of the Illinois statute, Ill.Rev.Stat.1935, c. 121½,

§ 132(1), applied in that case reads as follows:

" '(1) Every sale and contract of sale made in violation of any of the provisions of this Act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, *and* each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, * * *' " [Emphasis added.]

The court, in its opinion, reasoned as follows:

"From a grammatical standpoint, with due regard for punctuation, the natural and reasonable interpretation would seem to be that the liability of an officer and director, such as Goelitz was, is just as absolute as is that of the seller of the securities. It will be observed that the clause commencing with 'who shall have knowingly performed' obviously relates to the words 'each and every solicitor, agent or broker of or for such seller,' which are inclosed in commas immediately preceding that clause. It surely was not intended that the 'knowingly performed' clause would modify or apply to the 'seller of the securities.' When the act was amended to include 'officers and directors of the seller,' in our opinion, they were not only placed in the same grammatical category 'as the seller,' but we think that it was contemplated that liability should attach to them in the event of the sale of stock in violation of the Blue Sky Law by reason of their presumed knowledge of such sale."

The Illinois court then points out that if it had been the intent of the legislature, in amending the statute, to make the officers and directors of the seller liable only in the event they had knowingly performed any act, or in any way furthered the sale, it would have been an easy matter to have had the statute, as amended, read *"and* each and every officer, director, solicitor, agent or broker of or for such seller." [Emphasis added.]

Thus the reasoning in the Goelitz case supports our interpretation of the language contained in Section 10–04–17, N.D.C.C.

For these reasons we hold that the statute (Section 10–04–17, N.D.C.C.) does not impose absolute liability upon the directors of a corporation to purchasers of corporation securities sold in violation of the Securities Act because of their position as directors of the corporation. However, the statute makes them liable if they "participated or aided in any way in making such sale." The question then arises: Does the record in the summary judgment proceedings establish that no material fact exists on this question? We have studied the record submitted to the trial court in these proceedings and it appears that the following facts are established for summary judgment purposes, without contradiction:

1. The securities in question, most of which were subordinated debentures, were sold to the plaintiffs in violation of the Securities Act. The sales were made in the years 1963, 1964, 1965 and 1966.

2. The defendants who were granted summary judgments of dismissal were directors all of the time during which the securities in question were authorized and sold.

3. The directors authorized the issuance and sale of the securities involved in this action by resolution.

4. The corporation registered, with the securities commissioner, a 1974 debenture series on December 12, 1962, in the amount of $100,000. This registration was amended on March 18, 1963, by increasing the amount by $150,000. The offering was limited to creditors and stockholders.

5. The corporation registered a 1976 debenture series, qualified for a total offering price of $250,000, on August 20, 1964.

This registration was canceled by letter on May 26, 1965.

6. The corporation was a registered securities dealer until May 1, 1965. However, the registration between the dates of May 1, 1964, and May 1, 1965, was limited to selling, in the secondary market only, common stock of Great Plains Royalty Corporation and did not authorize the corporation to offer for sale, or sell, its own securities. Thus it was not registered as a dealer to sell its own securities after May 1, 1964.

7. The directors, by resolution, created an executive committee consisting of the president, executive vice-president, secretary, and treasurer, with power to exercise all of the authority of the board of directors in the management of the corporation. The resolution provides that a quorum shall consist of any two members of the executive committee.

8. During the period of time in which some of these debentures were sold, the directors, by several resolutions, approved all of the acts of the officers and manager of the corporation.

9. The directors did not know of the specific sales of the securities to the plaintiffs, although it appears that they knew securities were being sold by the corporation.

10. The annual audits for the years 1963 through 1965, reflecting the financial condition of the corporation, were incorrect, misleading and false, but the directors aver they had no knowledge thereof as they relied upon the independent auditors hired by the corporation, whose audits of financial statements reflected that the corporation was solvent. They relied upon the accuracy of these audits and financial statements, for the second reason, because large, independent and chain banks, and large insurance companies, had loaned large sums of money to the corporation during the period of time covered by these audits.

11. The defendants Engelhardt and Hewson, who sold the securities, were not licensed as securities salesmen. The hiring of Engelhardt, by management, was approved by the directors but the directors aver that they understood he was hired for office work and did not know that he was hired to sell securities, or that he sold any. The directors apparently did not know Hewson sold any securities. He was an employee of President Saxowsky in his garage and sold securities of State Acceptance Corporation on a part-time basis.

12. The name of Lorenz, secretary of the corporation, was affixed to the securities in question by the use of a facsimile signature, by authorization of the directors.

13. By resolution the directors created a manager of finance procurement and appointed the president, Saxowsky, to that position at a salary of $500 monthly. He was instructed, by directors' resolution, to pay particular attention to expanding upon bank credit lines, subordinate debentures, and long-term institutional financing.

14. The board of directors did not meet as regularly as provided by the bylaws.

15. The State Acceptance Corporation was adjudged bankrupt in December, 1966, but the record does not establish when it became insolvent.

16. The plaintiffs, as purchasers of the securities for which they seek reimbursement, have complied with the preliminary statutory requirements of the Securities Act entitling them to bring this action.

17. By their respective answers to the complaint, the directors admit that the defendant Koffler was the general manager of the corporation and that the defendant Saxowsky was a salaried president of the corporation. These two men were also members of the executive committee of the corporation. They got together on various occasions and discussed the business affairs of the corporation but claim they did not meet as a committee.

Section 10–19–36, N.D.C.C., provides:

"The business and affairs of a corporation shall be managed by a board of directors. * * *"

Ordinarily directors are not liable to creditors of a corporation for the torts of the corporation, or its agents. Hart v. Hanson, 14 N.D. 570, 105 N.W. 942; 19 Am.Jur.2d, Corporations, Section 1382; 25 A.L.R.3d 941–992. However, under Section 10–04–17, N.D.C.C., directors are made individually, or jointly, liable to a purchaser of securities sold in violation of the Securities Act if he, or they, participated or aided in any way in making the sale. What constitutes participation or aid—in any way—in making a sale of securities cannot be determined by a fixed rule of law. Each case must be determined upon its own facts.

The directors of a corporation are bound to use due care and to be diligent with respect to the management and administration of the affairs of the corporation. The fact that they receive no compensation does not relieve them from the duty of exercising due care. 19 Am. Jur.2d, Corporations, Section 1276. Although it is impossible to give an exact measure of care which would be deemed sufficient with respect to the duty owing by directors, it appears to be generally agreed that directors of a corporation are bound to exercise ordinary care. They are not insurers. The better rule appears to be that a director is bound to exercise, in the performance of the functions of his position, such care as a prudent man should exercise in like circumstances and charged with a like duty, which care is usually, but not necessarily, that which such a person would show in the conduct of his own affairs of a similar kind. 19 Am. Jur.2d, Corporations, Section 1277. However, in view of the Securities Act, if the directors participated or aided in any way in the unlawful sale of securities, they may, nevertheless, be liable irrespective of the care and diligence which they exer-

cised. They may incur personal liability if they participated or aided in any way in making the illegal sale. Section 10–04–17, N.D.C.C.; 47 Am.Jur., Securities Acts, Section 46. Participation is not necessary, under the statute, to render corporate directors liable where they aided in any way in making illegal sales of securities of the kind involved in a particular sale if such aid made the particular sale possible.

It appears that the facts presented in these summary judgment proceedings are not in conflict in any material respect. However, before summary judgment may be granted it must also appear that the movant is entitled to it as a matter of law. Feather v. Krause (N.D.), 91 N.W.2d 1. The evidence presented is to be liberally construed in favor of the party opposing the motion and he should be given all favorable inferences which might reasonably be drawn from the evidence. Wolff v. Light (N.D.), 156 N.W.2d 175; Moore's Federal Practice (2d ed.), Vol. 6, Sec. 56.15 [3], page 2337; Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, Sec. 1235.

The employment of inference from established facts to reach a judicial determination is a common and necessary process. Adams v. Little Missouri Minerals Association (N.D.), 143 N.W.2d 659–686.

The question of participation, or aid in any way, in making such sales is therefore a question for the jury unless the evidence is such that reasonable men can draw but one conclusion therefrom. If an inference may be drawn from the facts presented that the directors, or any of them, participated or aided in any way in making such sales, and a jury so finds, liability ensues.

In the summary judgment proceedings the directors filed their separate affidavits in support of their respective motions for summary judgment. In these affidavits they do not deny that there were securities violations by the corporation in the sale of the securities upon which recovery is

sought by the plaintiffs as purchasers. Their affidavits state that they had no knowledge or information of the violations alleged, and that they relied on the reports of their officers and the financial statements of their auditors. Some of the directors argue, on this appeal, that the affidavits of the attorney for the plaintiffs, in opposition to the motions for summary judgment, have no probative force because they were not made on personal knowledge of the facts recited and that he was not competent to testify to the facts averred. Therefore, they urge that we do not consider these affidavits in reviewing the summary judgment proceedings because they were not in compliance with Rule 56(e), N.D.R.Civ.P.

Rule 56(e), N.D.R.Civ.P., provides that supporting or opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. We find that the attorney's affidavits are not based on such personal knowledge of the facts recited as would be required to make him competent to testify. However, the defendants, in support of their motions for summary judgment, rely solely upon their claim that they, and each of them, were completely ignorant of any wrongdoing insofar as the Securities Act was concerned. In other words, the claims interposed in support of the motions for summary judgment go to facts which are peculiarly within the knowledge and control of the directors. One of the affidavits of the attorney for the plaintiffs, filed in opposition to the directors' various motions for summary judgment, avers that the plaintiffs could not, at that time, present, by affidavits, facts directly contradicting the facts and contentions set forth in the affidavits of the directors since such facts must necessarily come primarily from officers and directors of the corporation who are also defendants in the action, and that such information can be secured only through discovery processes. He also avers that none of the officers and directors of the corporation are friendly to the position maintained by the plaintiffs and that, in view of the complicity involved in the actions, affidavits could not then be presented in opposition to the motion. The affidavit also states that if the court is not inclined to deny the motions, the plaintiffs request a continuance of the matter until such time as the plaintiffs' discovery work can be completed and until such time as sufficient affidavits in opposition to these motions can be obtained or depositions taken.

It does not appear that an extension of time was granted to the plaintiffs as requested.

█ The plaintiffs claim that the directors were negligent and that they aided in making the sales. The directors admitted the securities violations by the corporation but contend that they had no knowledge thereof and did not aid or participate in any way in making the sales. The proof required to sustain the plaintiffs' claim must be drawn largely from the directors themselves and the officers of the corporation, all of whom are hostile to the plaintiffs' claims. The plaintiffs may have to rely principally on cross-examination to establish their claim against the directors and, for this reason, we do not think that their affidavits should be accepted as conclusive on the question of knowledge and preclude any trial of this issue.

We believe that it is possible, on a trial of the action, that evidence may be produced from which the jury may infer knowledge on the part of the directors, or some of them, of the securities violations alleged, and that they, or some of them, in some way participated or aided in making some, or all, of the sales. The statute does not require that the participation or aid in making an illegal sale be by personal contact with the buyer but is sufficient if, *in any way,* the director's participation

or aid made the sale possible. Thus, to preclude trial of these issues by the granting of summary judgments of dismissal based on the affidavits of the directors which relate to matters peculiarly within their own knowledge and control, without the benefit of cross-examination and observation of their demeanor as they testify, prevents an evaluation of credibility by the trier of the facts.

Where the court assumed that it may be unlikely that plaintiffs can prove their allegations because the proof must be drawn largely from the directors themselves by cross-examination, it was held in Subin v. Goldsmith, 224 F.2d 753 (2d Cir.), that the affidavits of the directors in summary judgment proceedings need not be accepted as conclusive and thus preclude a trial of that issue.

In Alvado v. General Motors Corporation, 229 F.2d 408 (2d Cir.), the court said that where an affidavit of a party in a summary judgment proceeding relates to facts peculiarly within the knowledge of the affiant, granting of summary judgment on the facts contained in such affidavit is error. The court gave as its reason that to do so would deprive affiant's opponent of the opportunity to cross-examine and thus prevent the trial court from being assisted in its evaluation of the credibility of the witnesses by observing their demeanor as they testified.

Although we recognize that a court should be cautious in granting a motion for summary judgment where the facts in issue are peculiarly in the knowledge of the moving party, we also realize that a certain burden is upon the opponent in summary judgment proceedings to attempt to obtain information of value to the court by the use of discovery proceedings provided by our rules of civil procedure. The five actions involving the directors and a number of other defendants were commenced the latter part of 1967 and the early part of 1968. The directors Letvin, Lanier and Tighe moved separately for summary judgment on April 24 and May 6 and 7, 1968, respectively. All three motions were heard on May 20, 1968, and a joint summary judgment was entered on all three motions on June 6, 1968. The directors Lorenz, Blank and Sondreal moved for summary judgment on June 20 and July 1 and 8, 1968, and all three motions were heard on July 22, 1968. Separate summary judgments were entered on October 14, September 26, and November 19, 1968, respectively. We hold, in this case, that due to the short period of time involved, the failure of the court to grant additional time to the plaintiffs to obtain depositions, and because the nature of the question involved pertains to knowledge peculiarly within the minds and control of the directors, the court erred in granting summary judgments.

For the reasons set forth herein, the summary judgments dismissing this action against the defendants Blank, Tighe, Sondreal, Lanier, Lorenz and Letvin are reversed.

STRUTZ, KNUDSON and ERICKSTAD, JJ., and ADAM GEFREH, D. J., concur.

PAULSON, J., deeming himself disqualified, did not participate; the Honorable ADAM GEFREH, one of the judges of the Third Judicial District, sitting in his stead.