Charles W. SCHOLLMEYER and Angaletta D. Schollmeyer, Plaintiffs and Appellees,

v.

Gilbert SAXOWSKY, Defendant and Appellant,

The Liberty National Bank and Trust Company, Defendant.

Civ. No. 8885.

Supreme Court of North Dakota.

Oct. 1, 1973.

Rehearing Denied Oct. 23, 1973.

See also N.D., 211 N.W.2d 389.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellant.

Freed, Dynes & Malloy, Dickinson, for plaintiffs and appellees.

PAULSON, Judge.

On December 18, 1965, Charles W. and Angaletta D. Schollmeyer [hereinafter Schollmeyers] purchased a subordinate debenture from Edward Engelhardt, who was a salesman for State Acceptance Corporation [hereinafter SAC]. The Schollmeyers were not aware of the fact that the debenture they purchased was subordinate or that it contained a no-recourse clause until they received the actual debenture a few days after the purchase.

The facsimile signature affixed to the debenture was that of Gilbert Saxowsky [hereinafter Saxowsky], the president and a director of SAC.

At the time of the sale to the Schollmeyers, SAC was not a registered dealer in securities and had not been so registered since May 1, 1965, at which time Sac's registration with the North Dakota Securities Commissioner was terminated. In addition, Sac's salesman, Engelhardt, was not and never had been a salesman licensed by the Securities Commissioner to sell securities.

On November 2, 1967, after indications of bankruptcy appeared on the part of SAC, the Schollmeyers filed this action against Saxowsky and others, alleging violation of the Securities Act and seeking remedies under § 10–04–17, N.D.C.C. The complaint alleged that Engelhardt was an unlicensed salesman, that he misrepresented the character of the SAC debentures, that SAC was not an authorized dealer in securities at the time of the sale in question to the Schollmeyers, and that Saxowsky had participated or aided in the sale of the debenture to the Schollmeyers, since Saxowsky was a force behind the use of said debentures for raising revenue in his position as president and a director of SAC.

Saxowsky denies that he participated or aided in any way in the sale of a debenture to the Schollmeyers and claims he was not aware that sales of debentures were made after the registration of the debentures expired.

On February 8, 1972, pursuant to jury verdict, the District Court of Burleigh County entered judgment in favor of the Schollmeyers and against Saxowsky. The amount of said judgment was amended on December 8, 1972, to include additional interest and court costs.

Saxowsky appeals from the judgment and from the order of the district court denying his motions to dismiss, for judgment

notwithstanding the verdict and in the alternative for a new trial.

Saxowsky charged eighteen specifications of error and insufficiencies of the evidence, which we have grouped into the following issues for review:

1) Whether the district court erred in refusing to grant Saxowsky's motions for dismissal at the close of the Schollmeyers' case and for a directed verdict at the close of all the evidence.

2) Whether the district court erred in failing to grant Saxowsky's motion for judgment notwithstanding the verdict and in the alternative for a new trial.

3) Whether the district court erred in failing to uphold the no-recourse clause contained in the debenture sold to the Schollmeyers.

4) Whether the district court erred in its computation of the amounts due the Schollmeyers for principal, interest, and attorneys' fees.

5) Whether the district court erred in admitting certain evidence.

6) Whether the district court erred in its instructions to the jury.

These issues will not necessarily be treated in the order just stated.

■ First of all, we hold that the appeal in this case was taken within the proper time, since the appeal period did not commence to run until notice of the entry of the amended judgment was served. We believe the judgment entered by the district court on February 8, 1972, was not a final judgment since it expressly left open for determination the amount of the recovery to be had.

■ As we held in Kack v. Kack, 142 N.W.2d 754 (N.D.1966), at paragraph 2 of the syllabus:

"If a judgment is rendered which does not adjudicate all claims and the trial court has not rendered an order under Rule 54(b), N.D.R.Civ.P., and the judgment is thereafter amended to include an adjudication of all claims, the time for appeal from the judgment does not begin to run until the notice of the entry of the amended judgment is served upon the adverse party."

We believe that the amount recoverable was a claim in this action and that the judgment was not final and appealable until notice of entry of the amended judgment of December 8, 1972, was served.

■ With regard to the admission of evidence, Saxowsky claims that several exhibits and some testimony were improperly admitted into evidence. Saxowsky claims that Plaintiffs' Exhibit 6, which is a letter to the shareholders of SAC from Saxowsky, is prejudicial and confusing and misleading to the jury. Saxowsky claims that Exhibit 6 has nothing to do with aiding or participating in the sale of debentures and that its admission into evidence is ground for a new trial. We believe that this exhibit, though not the most relevant, is far from prejudicial and confusing to the jury and that its admission into evidence could be considered nothing more than harmless error.

Plaintiffs' Exhibit 7 is a letter from The Liberty National Bank & Trust Company of Dickinson, which is another defendant in the actions brought by the Schollmeyers, and which letter states that the Bank resigns as the trustee for the debenture holders of SAC. This letter relates to the case against The Liberty National Bank & Trust Company of Dickinson and has no bearing on the instant matter.

■ Saxowsky charges error in admitting the testimony of the present State Securities Commissioner, since such testimony contained interpretations of the law which varied from the interpretations given to SAC by a former Securities Commis-

sioner. The variance is that the former Securities Commissioner said that a qualified officer of SAC could sell securities under the dealership of SAC without being licensed individually. The former Securities Commissioner wrote a letter to Matt G. Koffler, executive vice president and general manager of SAC, stating that he, Koffler, was the only officer so qualified to sell SAC securities. This letter made no reference to Mr. Engelhardt who negotiated the sale in the instant case to the Schollmeyers. Since the present Securities Commissioner's testimony did not conflict with the prior Commissioner's interpretation of the law on Engelhardt's authority to sell securities, we find the testimony to be admissible for the purpose of showing when the registration of the debentures expired and of showing that Engelhardt was never a licensed securities salesman.

■ Plaintiffs' Exhibits 8 and 9 are letters from the legal counsel for the former Securities Commissioner to Mr. Koffler and to Mr. Engelhardt. The letters are dated May 26, 1965, and July 15, 1965, respectively, and state that the registration of SAC as a dealer in securities had expired and that the registration of the subordinate debentures had also terminated. Saxowsky claims that these exhibits do not relate to aid or participation in the sale to the Schollmeyers and therefore should not have been admitted. We believe that these exhibits are relevant in showing that SAC had notice that its dealership registration and the subordinate debenture registration had expired. Saxowsky, as president, a director, and manager of finance procurement for SAC, is chargeable with that knowledge.

■ Plaintiffs' Exhibit 10 is an order of the Referee in Bankruptcy showing the claims that would be allowed in the bankruptcy of SAC; the Schollmeyers' names do not appear thereon. Saxowsky claims, since this order came after the sale to the Schollmeyers and did not relate to aiding or participating in such sale, that it was

prejudicial error to admit Exhibit 10 into evidence. The purpose of Exhibit 10 is to show that Schollmeyers' debenture is worthless and that they will be receiving no compensation from any other source. This is admittedly not relevant to the issue of Saxowsky's participating or aiding in the sale, but we believe that the admission of this exhibit was not confusing to the jury or prejudicial error with regard to that issue.

■ Plaintiffs' Exhibits 14 and 15 are copies of minutes of SAC directors' meetings. These minutes cover periods before and after the sale of the debenture to the Schollmeyers, and Saxowsky objects to the admission into evidence of Exhibits 14 and 15 on the ground that they are immaterial to the issue of participating or aiding in any way in the sale to the Schollmeyers. This objection is based on Saxowsky's belief that in order to participate or aid in the sale of the debenture to the Schollmeyers it would have been necessary that he knew of that particular sale and had had a personal hand in its transaction. We are not convinced that such is the law in North Dakota, as will be more fully explained later in this opinion. We believe that Exhibits 14 and 15 were properly admitted into evidence on the issue of Saxowsky's activities and knowledge with respect to the sales of the subordinate debentures, whether or not such activities and knowledge specifically relate to the sale of the debenture to the Schollmeyers. Especially relevant is the record included in the minutes of the SAC directors' meeting for August 27, 1963, which was prior to the sale of the debenture to the Schollmeyers and which minutes revealed that Saxowsky would be made manager of SAC's finance procurement program and would pay particular attention to the issuance and marketing of SAC's subordinate debentures.

■ Plaintiffs' Exhibit 19 is a letter written by Saxowsky to the Bismarck office of SAC, which mentions the printing of the debenture certificates and the need

385

for Saxowsky to prepare a registration book for them. Saxowsky objects to this exhibit as being too remote to the sale to the Schollmeyers. We believe, however, that Exhibit 19 was properly admitted into evidence to show Saxowsky's participation in the initiating of debenture sales as a financing method for SAC.

■ Plaintiffs' Exhibit 23 is composed of four letters written by Engelhardt in March and April of 1963, during the early stages of the debenture sales. All of these letters are written on the stationery of Sax Motors Company, which is where Engelhardt was employed during that time. Exhibit 23 was initially admitted into evidence and was later rejected by the trial court with an admonition to the jury to disregard such exhibit. Saxowsky claims that Exhibit 23 had a prejudicial effect on the jury, despite the court's admonition to disregard it, and claims that he should be granted a new trial. We do not see any substantial relevancy to the exhibit, but its admission into evidence and later rejection by the trial court did not work to Saxowsky's prejudice. The fact that Engelhardt was an unlicensed securities salesman was already known by the jury.

■ We determine that Saxowsky has not met his burden of proof to show that he was prejudiced by the evidentiary rulings of the district court. As we held in Grenz v. Werre, 129 N.W.2d 681 (N.D. 1964), at paragraph 7 of the syllabus:

"Error is never presumed upon appeal. The burden resting upon appellant is not sustained by showing mere error; he must show the error was prejudicial."

■ With regard to instructing the jury, Saxowsky claims that the district court erred by instructing that a director or an officer of a corporation could be liable for aiding or participating in an illegal sale of securities irrespective of the care and diligence each exercised in the conduct of the business of the corporation. Sax-

owsky claims this instruction is not relevant to the issue of participating or aiding in the illegal sale of securities. We think the instruction was permissible since the amount of care and diligence exercised by an officer or a director in the exercise of his office is not relevant to an illegal sale under § 10–04–17, N.D.C.C., and therefore should not be considered by the jury.

■ In addition, even if the challenged instruction was unnecessary, we believe that the instructions taken as a whole fairly outline the issues to be decided by the jury in this case. As we said in Wilbert v. Nielsen, 146 N.W.2d 26 (N.D.1966), in paragraph 1 of the syllabus:

"Instructions to a jury must be considered in their entirety. If the effect of the whole is to outline the issues in the case fairly and correctly, an isolated improper statement contained therein will not be considered prejudicial error."

Finally, the instructions were in accordance with the law as stated by this court in Weidner v. Engelhart, 176 N.W.2d 509, 518 (N.D.1970).

■ Saxowsky further claims that the district court erred in failing to uphold the no-recourse agreement contained in the debenture certificate. That agreement reads:

"No recourse shall be had for the payment of the principal of or the interest or premium, if any, on this Debenture or for any claim based hereon or otherwise in any manner in respect hereof, or in respect of the Indenture, against any incorporator, stockholder, officer or director, past, present or future, of the Company or of any predecessor or successor corporation, whether by virtue of any constitutional provision or statute or rule of law, or by the enforcement of any assessment or penalty or in any other manner, all such liability being expressly waived and released by the acceptance hereof and as part of the consideration for the issue hereof. . . ."

The district court held this clause in the debenture to be invalid as being contrary to public policy. We believe that this no-recourse clause in the debenture is contrary to the spirit of § 10–04–17, N.D.C.C., which reads in pertinent part:

"Every sale or contract for sale made in violation of any of the provisions of this chapter, or of any order issued by the commissioner under any provisions of this chapter, shall be voidable at the election of the purchaser. The person making such sale or contract for sale, and every director, officer, salesman, or agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser in any action at law in any court of competent jurisdiction upon tender to the seller, in person or in open court, of the securities sold or of the contracts made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section. . . ."

To uphold the no-recourse clause in the debenture sold to the Schollmeyers would be to defeat the commendable purposes of § 10–04–17, N.D.C.C.

In 17 Am.Jur.2d, Contracts § 179, at page 542, we find this language:

"It has been said that agreements are against public policy where they tend to injustice or oppression, restraint of liberty and natural or legal right, or to the obstruction of justice, or to the violation of a statute. . . ."

We believe that, in the instant case, the no-recourse clause in the debenture is against public policy because it tends to the oppression of the rights of purchasers as expressed in § 10–04–17, N.D.C.C., and restrains the legal rights conferred by this section of North Dakota law.

▬▬▬ The major issue in this case revolves around what constitutes "partici-

pation or aid in any way" as required by § 10–04–17, N.D.C.C., in order to hold officers and directors liable for violations of the Securities Act. We think our decision in Weidner v. Engelhart, 176 N.W.2d 509 (N.D.1970), is controlling.

In *Weidner* we considered much the same facts as are present in this case, although Saxowsky was not involved in the *Weidner* appeal. We held in *Weidner,* at paragraphs 2 and 3 of the syllabus, that:

"2. In order for a director of a corporation to be held liable under Section 10–04–17, N.D.C.C., to a purchaser of corporate securities sold to him in violation of the Securities Act, he must have participated or aided in some way in making the sale.

"3. Ordinarily, directors of a corporation are not liable to creditors of the corporation for the torts of the corporation; however, where the sale of corporate securities, which were sold in violation of the Securities Act, is concerned, a director, or directors, jointly or severally, may incur liability to the purchasers thereof irrespective of the care and diligence he, or they, exercised as a corporate director if he, or they, participated or aided in any way in making such illegal sales."

In explanation of our holding, we said in *Weidner, supra,* 176 N.W.2d at 515:

". . . we construe Section 10–04–17, N.D.C.C., to require proof of participation or aid in order to hold a director, officer, salesman or agent liable to a purchaser of securities sold in violation of the Securities Act."

And, at page 518 of *Weidner,* we said:

"What constitutes participation or aid —in any way—in making a sale of securities cannot be determined by a fixed rule of law. Each case must be determined upon its own facts.

. . . . . .

" . . . Participation is not necessary, under the statute, to render corporate directors liable where they aided in any way in making illegal sales of securities of the kind involved in a particular sale if such aid made the particular sale possible.

. . . . . . .

"The employment of inference from established facts to reach a judicial determination is a common and necessary process. Adams v. Little Missouri Minerals Association (N.D.), 143 N.W.2d 659, 686.

"The question of participation, or aid in any way, in making such sales is therefore a question for the jury unless the evidence is such that reasonable men can draw but one conclusion therefrom. If an inference may be drawn from the facts presented that the directors, or any of them, participated or aided in any way in making such sales, and a jury so finds, liability ensues."

And, at pages 519–520 of *Weidner,* we said:

"The statute does not require that the participation or aid in making an illegal sale be by personal contact with the buyer but is sufficient if, *in any way,* the director's participation or aid made the sale possible."

The material quoted from *Weidner* makes it clear to us that the district court in the instant case properly denied Saxowsky's motions to dismiss the Schollmeyers' complaint and for a directed verdict against the Schollmeyers at the close of all the evidence. Considering the law as stated in the *Weidner* case, from which we have quoted previously, we think it was proper for this case to be submitted to the jury and for the jury to decide as it did.

There was evidence admitted at the trial that Saxowsky, as president and a director of SAC, was a guiding force behind the sale of SAC debentures. The minutes of SAC directors' meetings, which were admitted into evidence, included entries that showed that Saxowsky was made the manager of finance procurement for SAC, for which he was specially compensated; that he was to pay special attention to the sale of debentures, among other things; and that he was aware of difficulties with the Securities Commissioner over licensing of salesmen and the registration of the SAC debentures. Saxowsky hired Engelhardt, who had been for many years an employe in Saxowsky's automobile business, and whom Saxowsky must have known was not a licensed securities salesman. Nevertheless, Saxowsky knew Engelhardt was selling SAC securities in the form of the subordinate debentures involved in this case. From this evidence it was competent for the jury to find that Saxowsky was active in the management of SAC and was involved with every aspect of the SAC business, including the sale of its subordinate debentures.

In light of the rule stated in the *Weidner* case, namely, that liability under § 10–04–17, N.D.C.C., can be placed on a director without his having personal contact with a purchaser in an illegal sale of securities, the jury was justified in finding that Saxowsky aided in the illegal sale of the subordinate debenture to the Schollmeyers.

In Farmers Union Grain Terminal Ass'n v. Briese, 192 N.W.2d 170 (N.D.1971), we held in paragraphs 2 and 3 of the syllabus:

"2. On an appeal from an order denying a motion for judgment notwithstanding the verdict, the only grounds which will be considered are those which were assigned on the motion for a directed verdict.

"3. On review of an order denying a motion for judgment notwithstanding the verdict the Supreme Court is limited to a consideration of the evidence, and if the record is such that there is some issue of fact for the jury and it rendered a verdict thereon, the order will be affirmed."

From our discussion of the evidence and the propriety of a directed verdict against the Schollmeyers, it is evident that a judgment notwithstanding the verdict in the instant case would have been improper. The grounds for a directed verdict were not sufficient and therefore those grounds also were not sufficient to justify a judgment notwithstanding the verdict. As we stated earlier, there was sufficient evidence to go to the jury to decide the issue; the jury rendered a verdict on that evidence; and the district court order denied a motion for judgment notwithstanding the verdict. We affirm that order. Linington v. McLean County, 161 N.W.2d 487, ¶¶ 1 and 2 of Syllabus (N.D.1968).

 In Odegaard v. Investors Oil, Inc., 118 N.W.2d 362 (N.D.1962), we held in paragraph 2 of the syllabus:

"Upon an appeal from an order denying a motion for judgment notwithstanding the verdict or in the alternative for a new trial, the Supreme Court will review the correctness of the order with respect to properly assigned specifications of error and insufficiency of the evidence that were before the trial court."

Our entire discussion of this case has consisted of a review of the specifications of error and insufficiencies of the evidence. From our previous consideration of the evidence and the province of the jury in rendering a verdict based on that evidence, we affirm the district court's order denying a new trial to Saxowsky.

Section 10–04–17, N.D.C.C., previously quoted in part, provides that the recovery for a violation of the Securities Act shall include the principal amount of the contract, taxable court costs, and reasonable attorney's fees. The purpose of § 10–04–17 is to provide the investor full recovery of his investment without deduction for attorney's fees or court costs. We think the trial court accomplished that purpose in the instant case.

The amended judgment of the district court established liability on the part of Saxowsky in the following amounts:

| | |
|---|---|
| Face amount of subordinate debenture .. | $5,000.00 |
| Less net recovery thereon from prior settlements ...................... | 1,568.92 |
| Amount of principal unpaid ......... | $3,431.08 |
| Interest at 7% per annum from 9/1/66 to 10/1/72, computed on unpaid balance of principal from time to time .. | 1,955.25 |
| Additional interest from 10/1/72 to 12/8/72 ........................ | 45.02 |
| Attorneys' fees (⅓ of $3,431.08) ..... | 1,143.69 |
| Taxable costs taxed and allowed ....... | 249.70 |
| TOTAL JUDGMENT ............... | $6,824.74 |

This amended judgment will repay to the Schollmeyers the full amount of their investment, plus interest. The costs and attorneys' fees have been applied in addition.

 With respect to the reasonableness of the attorneys' fees, we believe our holding in the case of Municipal Airport Authority of City of Fargo v. Stockman, 198 N.W.2d 212 (N.D.1972), decides the issue. In the *Stockman* case we held, in paragraphs 2 and 3 of the syllabus:

"2. The trial court is expert on value of legal services and may consider its own knowledge and experience in making an appraisal of the reasonable value of legal services rendered.

"3. When a trial judge presided at the trial, had knowledge of the character of the litigation, observed the skill of the presentation, received evidence of the preparation for trial, and had knowledge of the results obtained, and having considered these factors coupled with his own knowledge and experience, made an award of attorney's fees as being reasonable, such determination will not be overturned on appeal in the absence of an affirmative showing that the trial court abused its discretion."

 In the instant case, the amount of the award of attorneys' fees was exactly the amount which was recommended by counsel for the Schollmeyers in a letter to the district judge dated August 10, 1972.

We believe that no grounds exist now to complain about the amount of such award. In addition, we believe that the district court used its experience and discretion without abuse in determining the amount of attorneys' fees to be awarded in this case. We will therefore not overturn that determination.

The judgment and orders appealed from are, in all things, affirmed.

ERICKSTAD, C. J., and TEIGEN, VO-GEL and KNUDSON, JJ., concur.

VOGEL, J., not being a member of the Court at the time of submission of this case, participated on the briefs filed.